■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CHANCE SHARPER, Appellant. [681 NYS2d 12] —Judgment, Supreme Court, New York County (Joan Sudolnik, J.), rendered March 21, 1996, convicting defendant, after a jury trial, of six counts of robbery in the first degree and two counts of attempted robbery in the first degree, and sentencing him, as a second felony offender, to six concurrent terms of 12½ to 25 years on the robbery convictions to run concurrently with two concurrent terms of 7½ to 15 years on the attempted robbery convictions, reversed, on the law, and the matter remanded for a new trial.

Defendant and Karim Johnson were indicted for robbery in the first degree and tried together. During the third round of jury selection, the court inquired as to whether any of the panel members had friends or relatives working in the area of law enforcement. One prospective juror stated that he routinely came into contact with police officers and prisoners through his work as a doctor at Bellevue Hospital. His interactions with these individuals inspired in him "a lot of trust and respect for police officers," so much so that when asked whether he could evaluate police testimony fairly, he equivocated as follows: "I don't know, but I would guess so, but I am not positive." At a

later point during the voir dire, he volunteered the information that he would tend to credit the testimony of a police officer over that of an ordinary civilian. In addition, one of the doctor's friends was a prosecutor in the Manhattan District Attorney's office, the office prosecuting this case.

Defense counsel challenged this juror for cause on two grounds: first, the indications of bias detailed above, and second, the juror's fear that he would be unable to concentrate on the case because he would be missing important training sessions at the hospital, including his rotation in the Intensive Care Unit. In denying the challenge, the trial court spoke only of the latter point. There was no indication that the court found the doctor's expressed partiality to the prosecution was a pretext to avoid missing work. In fact, the court simply ignored the defendant's argument as to bias.

Since the court refused to remove this juror for cause, defense counsel used a peremptory challenge. We agree with defendant's contention that the trial court abused its discretion in declining to remove this juror, and we find that this error warrants the grant of a new trial.

When a defendant's peremptory challenges are exhausted before jury selection is complete, as occurred here, an erroneous denial of a challenge for cause constitutes reversible error (CPL 270.20 [2]; *People v Hewitt*, 189 AD2d 781). A challenge for cause should be granted when a prospective juror manifests a state of mind that is likely to preclude him from rendering an impartial verdict (*see, People v Torpey*, 63 NY2d 361, 369).

Case law is clear that a prospective juror who expresses partiality towards the prosecution and cannot unequivocally promise to set aside this bias should be removed for cause (*People v Blyden*, 55 NY2d 73, 78). In *People v Taylor* (120 AD2d 325), we reversed the defendant's conviction because the court had denied a challenge to a prospective juror, the daughter of a police officer, who said she " 'can't absolutely assure' " that she could put aside her predisposition to believe a police witness. As in the instant case, the defense used a peremptory challenge to remove the juror and subsequently exhausted its challenges before the end of voir dire (*supra,* at 326). Similarly, in *People v Scott* (170 AD2d 627), the trial court wrongly declined to remove a prospective juror who answered "I hope not. I don't know", when asked whether she could be impartial towards police witnesses even though her nephew worked for the FBI. The venirepersons' statements in *Taylor* and *Scott* are equivalent to those of the challenged juror herein.

In *Blyden* (*supra*), the defendant was Black and the prospec-

tive juror expressed a serious bias against racial minorities. When asked whether he could put his feelings aside to decide this case, he was only able to respond, " 'I think I could.' " (*Supra,* at 75.) The Court of Appeals observed that "[w]hen a question is raised regarding a prospective juror's ability to render an impartial verdict," he should be discharged unless he makes an "unequivocal" promise to set aside his prior state of mind and to render a verdict based solely on the evidence (*People v Blyden,* 55 NY2d 73, 77-78, *supra*). The juror's responses fell short of this standard (*supra,* at 79).

Here, not only did the challenged juror fail to follow his initial hesitation with an unambiguous promise to be fair, but also made a further statement indicating bias. As noted above, when defense counsel asked the panel as a whole whether anyone would tend to grant special credence to police testimony, the doctor volunteered an affirmative answer. Under these circumstances, the trial court should have discharged the juror. Concur—Rosenberger, J. P., Wallach and Tom, JJ.

Ellerin and Nardelli, JJ., dissent in a memorandum by Nardelli, J., as follows. The third panel of potential jurors in this case included a physician from Bellevue Hospital who told the court he had a friend in the District Attorney's office and that he dealt with prisoners and with police officers. The doctor told the court that he did not know whether this would affect his ability to be fair and that he had great respect for officers. He also acknowledged, however, that some police officers are honest and some dishonest. When asked directly by the court whether he could evaluate the testimony of police officers fairly, he replied: "I don't know, but I would guess so". He later agreed he would "tend to favor the police testimony." This physician noted that he was scheduled to begin a two-week training assignment in his hospital's intensive care unit. When asked if he could give the case his full attention, he responded that "I could possibly be thinking about" the intensive care unit. However, he again conceded that if he were replaced he would have no obligations to the unit, but he also asserted if the trial were a long one, he would definitely be wondering what is going on in the hospital and that this "might" interfere with his ability to deliberate.

As noted by the majority, the defense challenged this doctor on two bases. The first one was his stated respect for the police and how he would give them more credence than the normal witness. Counsel also noted that "equally if not more important" the doctor would not be able to deliberate if the trial were long because he would be bothered by his medical duty.

There was then a colloquy between the prosecutor, defense counsel and the court and the court concluded that the challenge for cause should be denied. However, neither the court nor the prosecutor addressed the doctor's comments about police witnesses. The defense counsel did *not* bring this omission to their attention, but used a peremptory challenge against the doctor.

The majority finds that this was an erroneous denial of a challenge for cause and constituted reversible error. However, defendant's current position, and that enunciated by the majority, was *not fairly* presented to the trial court. Defense counsel briefly noted that the doctor might not be able to fairly assess police testimony and then went into another "if not more important" issue. Although it is obvious that both the court and prosecutor were concentrating on the second issue raised by defense counsel and had missed the first point, counsel did not bring that fact to their attention. Since defendant did not raise the issue during the argument or request a ruling from the judge on this specific issue, but simply made a "perfunctory" mention of the issue, it is unpreserved (*People v Anderson*, 242 AD2d 489, *lv denied* 91 NY2d 888; *People v Hernandez*, 122 AD2d 856, 857).

Moreover, a review of the record reveals that another potential juror informed the court that she had known Michael Stewart, an individual who was killed by the Transit Police. When the court asked her whether she could listen to the testimony of police officers with an open mind, she also replied that she would "try" to, but she noted that she was definitely biased and that while she would "try to be open" she didn't "know" if she could. When the court denied the challenge by defendant to the doctor for cause, it also denied the challenge to this latter female juror made by the prosecutor, necessitating that the prosecutor use a peremptory challenge for this individual.

The majority correctly cites *People v Blyden* (55 NY2d 73) for the proposition that a prospective juror who expresses partiality and cannot unequivocally promise to set aside the bias should be removed for cause. However, in this case, the doctor was *never asked* if he could set aside any bias. Defense counsel could have asked the court to question the doctor further about his ability to be fair and to impartially judge the testimony of any police officer witness. As shown by its treatment of both the doctor and the female panelist, the court exercised its sound discretion, after observing and listening to both, in deciding that a challenge for cause as to both should be denied.

We have previously held that a for-cause challenge was properly denied where a "potential juror's assurances of impartiality were cautiously phrased" (*People v Smith*, 232 AD2d 209, *lv denied* 89 NY2d 946). Likewise in this case, the doctor never gave "any indication of actual bias" (*supra,* at 209). Therefore, the court, which had the opportunity to observe the doctor and his responses, did not abuse its discretion in finding that he could sit.