OPINION OF THE COURT
Chief Judge Kaye.
Common to these cases is the question whether a challenge for cause may properly be denied when a prospective juror expresses doubt as to impartiality in the case, and there is no unequivocal indication of that person’s ability to set aside any predisposition and fairly appraise the evidence. We conclude that, in these circumstances, a challenge for cause should be granted.
I.

People v Johnson and People v Sharper

Defendants Karim Johnson and Chance Sharper were indicted in connection with a robbery at a Manhattan recording studio. Their defense was based on police incompetence. The relevant record regarding a challenged prospective juror follows in full.
Trial Judge:
“[A] number of witnesses who will be testifying are police officers, they are to be treated the same as any other witness, they are entitled to no greater weight or lesser weight just because they are police officers. Can you treat their testimony the same as any other witness and hold them to the same standard as you would any witness?”
“And [Prospective Juror 7?]”
Prospective Juror 7:
“I have a friend in the Manhattan DA’s office, and I deal with both prisoners and police officers.”
Trial Judge:
“Speak up a little bit.”
*604 Prospective Juror 7:
“I deal with both prisoners and police officers.”
Trial Judge:
“[Where] do you work?”
Prospective Juror 7:
“Bellevue Hospital.”
Trial Judge:
“You’ve had dealings with the District Attorney’s office I guess?”
Prospective Juror 7:
“I am sorry.”
Trial Judge:
“Have you had any dealings with the District Attorney’s office?”
Prospective Juror 7:
“No, just — I have a friend in the District Attorney’s office.”
Trial Judge:
“Okay.
“Is your friend a prosecutor or — .”
Prospective Juror 7:
“Prosecutor.”
Trial Judge:
“In view of any of the contacts you had with anyone related to or working for the criminal justice system, are there any opinions that you have formed or any ideas that you hold that would affect your ability to be fair in a criminal case?”
Prospective Juror 7:
“I don’t know. I have a lot of trust and respect for police officers.”
Trial Judge:
“I don’t think anyone quarrels with that attitude, but do you also recognize that police officers are subject to the same problems and failings that we *605 all have? In other words, there are some good police officers, bad ones, honest ones, dishonest ones?”
Prospective Juror 7:
“I guess.”
Trial Judge:
“Could you evaluate the testimony of police officers fairly?”
Prospective Juror 7:
“I don’t know, but I would guess so, but I am not positive.”
Defense Counsel:
“[Prospective Juror 4], you said and of course we will get into what you would like to say in private, but as you know of course police officers will be testifying, if the Judge states that you are to give the same credence to police officers one way or the other as any other witness, they are not considered more or less credible, do you think you can abide by that instruction?”
Prospective Juror 4:
“Sure.”
Defense Counsel:
“[Prospective Juror 2], do you think you can abide by that instruction if the Judge told you that police officers were no more or no less credible than anybody else?”
Prospective Juror 2:
“I would try. Once again, I will probably give them the benefit of the doubt.”
Defense Counsel:
“Does — anybody else in the jury who would tend to favor the police testimony more than say a civilian’s testimony? Anybody else?”
Prospective Juror 7:
“I would.”
Defense Counsel:
*606 “You would?”
Prospective Juror 7:
“Yes.”
Defendants challenged Prospective Juror 7 for cause, arguing that he — like Venireperson 2, who had already been excused — favored police testimony. After the court denied the challenge for cause, defendants exercised a peremptory challenge against him. They exhausted all of their peremptory challenges before the jury was sworn, and were ultimately convicted of six counts of robbery in the first degree and two counts of attempted robbery in the first degree.
The Appellate Division reversed defendants’ convictions and ordered a new trial, holding that the trial court abused its discretion when it denied defendants’ challenge for cause where the prospective juror expressed “a heavy bias in favor of police testimony over layperson testimony” (People v Johnson, 255 AD2d 136). The court explained that the case “law is clear that a prospective juror who expresses partiality towards the prosecution and cannot unequivocally promise to set aside this bias should be removed for cause. * * * The juror’s responses fell short of this standard” (People v Sharper, 255 AD2d 139, 140-141). We affirm.

People v Reyes

Defendant Rogelio Reyes was indicted for selling heroin. During voir dire, the prosecutor questioned the venirepersons about drug sales in their neighborhoods. Again, the relevant record regarding two challenged prospective jurors follows in full.
Prospective Juror 13:
“I have a ten year old son. He plays in various parks, Washington Square Park.
“He [is] always accompanied by an adult in Washington and Tompkins Square Park there is a lot of drugs, it’s there, activity there. Those are the neighborhood parks, we have to let him go there. It’s very upsetting and with the resurgence of heroin, I see more and more people just collapsing on the street.
“How do you explain that to your ten year old? What’s wrong with the person? It’s obvious to me what it is. I know what it looks like.”
*607 Prosecutor:
“[T]his person’s experience as a parent in New York State with this activity going on would affect your ability to be fair and impartial in this case where the defendant is charged with selling?”
Prospective Juror 13:
“Possibly. I have different opinions about drugs, but heroin I think is one of the most dangerous drugs.”
Defense Counsel:
“As you’ve heard, my client was arrested for selling drugs, and as we have discussed, drugs are sold in every neighborhood now and affects our lives detrimentally. It’s difficult living in a neighborhood where you walk outside and people sell drugs.
“We have children and it’s disturbing they are sold so openly. People can be aggressive and abrasive who sell drugs.
“Ma’am, I believe you talked with the assistant about the fact you have a child. It’s very disturbing?”
Prospective Juror 13:
“It is.”
Defense Counsel:
“The fact my client has been arrested for selling drugs, as you mentioned, it’s for selling heroin. Can you honestly be fair and impartial in this case and base your decision only on the evidence you hear in this case?”
Prospective Juror 13:
“I can only try to do that. I’ve listened to the evidence. There are a lot of emotional things involved. That may color my views about someone selling heroin or drugs for that matter.”
Defense Counsel:
“You think it’s possible — understandably your *608 emotional feelings would affect your ability to be impartial?”
Prospective Juror 13:
“It’s difficult. I wonder with a ten year old son how many years do I have left before I have to let him out on his own. I don’t care how many envelopes they have selling drugs, ten or three thousand dollars worth. They are selling illegal drugs.”
Defense Counsel:
“This is really the time to express your opinion. It’s important. My client is on trial for drugs and he has said, T didn’t sell them.’
“Any preconceived notions, or if you feel — now is the time to say it. If you don’t feel comfortable here we can approach.
“[Prospective Juror 13], you said it would be difficult. I appreciate that.”
Later, the questioning turned to defendant’s prior convictions.
Defense Counsel:
“[Prospective Juror 2], do you think because my client has been convicted in the past of the crimes I discussed that he automatically is guilty of selling drugs?”
Prospective Juror 2:
“No.”
Defense Counsel:
“[Prospective Juror 13], how do you feel about it?”
Prospective Juror 13:
“Definitely makes me wonder about his character.”
Defense Counsel:
“Do you think he’s automatically guilty?”
Prospective Juror 13:
“Not automatically.”
Defense Counsel:
“Would it be difficult to be open-minded?”
*609 Prospective Juror 13:
“Again, I would have to say [it] might be difficult.”
Defense Counsel:
“I appreciate your honesty.”
“[Prospective Juror 14?]”
Prospective Juror 14:
“I don’t think automatically it makes him guilty.”
Defense Counsel:
“Would it be fair, do you think it’s difficult to be fair and objective?”
Prospective Juror 14:
“Maybe slightly, to be honest.”
There were no further questions of Prospective Jurors 13 or 14. Defense counsel challenged Prospective Juror 13, urging:
“I have number 13 for cause * * *. She had very strong opinions about, first of all, the fact my client was charged with drugs and whether or not she could be fair, and I believe she said she would find it very difficult in light of the fact she has I believe an eight year old child who plays in the park, and they sell drugs there.
“Also, she had [a] strong opinion about the fact that my client has a criminal conviction. She said I believe it would be very difficult for her to be fair and objective and consider this evidence, without forming an opinion based on the fact my client has prior convictions.
“That would make it very difficult for her to be fair and objective.”
The Trial Judge ruled:
“Challenge for cause as to [Prospective Juror 13] will be denied. In fact, I do believe while she was clearly candid talking about the difficulty she would face, she on balance indicated she could be fair in this case, that she would be open-minded.
“She acknowledged the information, the fact the past conviction would have in evaluating the testimony, but she indicated she could be fair.”
*610 Defense counsel next challenged Prospective Juror 14 for cause, explaining that:
“Number 14 * * * [a] Iso indicated that because my client has a criminal conviction in his past, it would be difficult for her to be fair and not strongly consider it in deciding whether or not he was innocent or guilty.”
The Trial Judge ruled:
“Cause is denied as to [Prospective Juror 14]. She clearly indicated two times, I believe, she could be fair. Was candid in indicating it would be somewhat difficult, but she said she could be fair in this case.”
Defendant exercised peremptory challenges against both prospective jurors. He exhausted all his peremptories before completion of jury selection and was ultimately convicted. On appeal, the Appellate Division affirmed, concluding that the Trial Judge “properly exercised * * * discretion in denying defendant’s challenges for cause” and that the over-all responses of each venireperson “negated any substantial risk of bias” (255 AD2d 228, 228-229). We now reverse and order a new trial.
II.
Fundamental to our constitutional heritage is án accused’s right to trial by an impartial jury (NY Const, art I, § 2; US Const 6th, 14th Amends; see also, Duncan v Louisiana, 391 US 145, 151-154). Indeed, nothing
“is more basic to the criminal process than the right of an accused to a trial by an impartial jury. The presumption of innocence, the prosecutor’s heavy burden of proving guilt beyond a reasonable doubt, and the other protections afforded the accused at trial, are of little value unless those who are called to decide the defendant’s guilt or innocence are free of bias” (People v Branch, 46 NY2d 645, 652).
To safeguard the cherished right to an impartial jury, the former Code of Criminal Procedure authorized a challenge for cause where a prospective juror had a state of mind “in reference to the case, or to either party,” which satisfied the court “in the exercise of a sound discretion that such juror [could not] try the issue impartially and without prejudice to the *611 substantial rights of the party challenging” (former Code of Criminal Procedure § 376 [2]). Such predisposition or bias, however, was not automatically a ground for exclusion where prospective jurors swore that they did not believe their opinion or impression would influence their verdict, and that they could render an impartial verdict according to the evidence. As this Court explained in People v Culhane (33 NY2d 90, 107), even rote recitation of an “expurgatory oath” did not end the Trial Judge’s responsibility to assure an impartial jury:
“ Tt is not enough to be able to point to detached language which, alone considered, would seem to meet the statute requirement, if, on construing the whole declaration together, it is apparent that the juror is not able to express an absolute belief that his opinion will not influence his verdict * * * The defendant [is] at least entitled to a certain and unequivocal declaration of their belief that they could decide the case uninfluenced by their previous opinions.’ ”
In 1970, as part of the new Criminal Procedure Law, the Legislature adopted CPL 270.20, which consolidated, “without substantial change,” a number of provisions from the Criminal Code relating to challenges for cause, including section 376 (Commn Staff Notes, reprinted in NY Cons Law Serv, Book 7D, CPL 270.20, at 176; see also, People v Culhane, supra, 33 NY2d, at 104, n 2, citing Denzer, Practice Commentary, McKinney’s Cons Laws of NY, Book 11A, CPL 270.20 [“For the most part (section 270.20) restates the prior law”]). In simpler language than its predecessor, CPL 270.20 authorizes parties to seek dismissal of a prospective juror based on “actual bias” whenever “He has a state of mind that is likely to preclude him from rendering an impartial verdict based upon the evidence” (CPL 270.20 [1] [b]; Preiser, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11 A, CPL 270.20, at 425). Most significantly for present purposes, the Legislature eliminated the “talismanic expurgatory oath” requirement, giving Trial Judges both “greater flexibility and a greater responsibility” in determining which venirepersons should be excused for cause (People v Culhane, supra, 33 NY2d, at 104, n 2).
Three Court of Appeals decisions define the contours of the statute. In our first major application of CPL 270.20 (1) (b) — People v Blyden (55 NY2d 73) — involving an African- *612 American defendant, a prospective juror who was a construction worker told the Trial Judge that because of Federal affirmative action programs he was “against minorities,” and did not know whether his feelings would affect his deliberations. In response to the court’s thrice repeated question whether he could put aside his feelings, he said, ‘Yes, I think I could,” and “I think I could.” Asked if he had already made up his mind about the case, he answered “absolutely not.”
This Court nonetheless reversed defendant’s conviction and ordered a new trial, explaining that:
“When a question is raised regarding a prospective juror’s ability to render an impartial verdict, it is still necessary that the prospective juror in unequivocal terms ‘must expressly state that his prior state of mind concerning either the case or either of the parties will not influence his verdict, and he must also state that he will render an impartial verdict based solely on the evidence.’
“[I]t is essential that all elements of the required statements be voiced, and that they be voiced with conviction. The mere words themselves, however, have no talismanic power to convert a biased juror into an impartial one, although they do nonetheless provide a minimum level of protection.” (Id., at 77-78, quoting People v Biondo, 41 NY2d 483, 485 [applying former Code Crim Pro § 376], cert denied 434 US 928.)
Because question was raised as to the prospective juror’s ability to be impartial, and he gave no unequivocal assurance that he could render an impartial verdict, we concluded that it was error not to excuse him.
Some two years later, in People v Williams (63 NY2d 882, 883-884), a burglary prosecution, two prospective jurors stated that “although they did not associate with blacks they could render a fair and impartial verdict,” (emphasis added) and although “they did not approve of interracial marriages * * * they did not feel that the circumstance that defendant [an African-American] had had a white girlfriend * * * would interfere with their verdict” or affect their ability to sit on the jury. Unlike in Blyden, the prospective jurors in Williams themselves never expressed doubt that they could serve *613 impartially. Both because the Trial Judge concluded that their statements did not constitute “actual bias” and because the prospective jurors asserted unequivocally that they could listen “fairly and impartially and that their feelings would not affect their ability to sit on the jury,” we concluded that it was not an abuse of discretion to deny defendant’s challenge for cause. We explained that:
“most if not all jurors bring some predispositions, of varying intensity, when they enter the jury box. It is only when it is shown that there is a substantial risk that such predispositions will affect the ability of the particular juror to discharge his responsibilities (a determination committed largely to judgment of the Trial Judge with his peculiar opportunities to make a fair evaluation) that his excuse is warranted. Were the rule otherwise, it would be difficult not to require the discharge * * * of every potential juror who disclosed anything but total absence of prejudice * * *, notwithstanding his stated readiness to lay his feelings aside in the discharge of his duties as a juror” (id., at 885 [emphasis added]).
Finally, in People v Torpey (63 NY2d 361, rearg denied 64 NY2d 885), decided one month after Williams, we once again concluded that in cases of “actual bias” — that is, where a pro- - spective juror has a “state of mind that is likely to preclude him from rendering an impartial verdict” — an unambiguous assurance of impartiality is required before a challenge for cause may be denied. We noted that:
“where there is a prima facie showing of actual bias, the Trial Judge should require the prospective juror to ‘expressly state that his prior state of mind * * * will * * * not influence his verdict, and * * * that he will render an impartial verdict based solely on the evidence’ ” (id., at 367, quoting People v Biondo, supra, 41 NY2d, at 485).
In Torpey, a prospective juror who had read that the defendant was a Mafia “hit man,” indicated she “probably” had a negative impression of him and that it “probably” would not be fair to have someone with her frame of mind seated on the jury. Asked whether she was willing to put aside her impression and “give both sides a fair trial based on the evidence in this courtroom and nothing else,” she responded, “I think I can” (id., at 365). *614 Concluding that this statement fell short of the required unequivocal statement of impartiality, we reversed defendant’s conviction and ordered a new trial.
Torpey made clear that the principles underlying Blyden and Culhane apply “regardless of the cause of the prospective juror’s actual bias” {id., at 366). Indeed, where a juror’s predisposition related not to the particular facts of the case but to a party — as in Torpey — “the evidence at trial might not address the basis of the juror’s impression and thus may not alter this impression” {id., at 368). Mindful of that risk, we concluded:
“the test for whether such bias has been overcome by declarations is even stricter than where the juror has expressed an opinion as to the defendant’s guilt. * * * [T]he prospective juror should be dismissed if there appears to be any possibility that his impressions * * * might influence his verdict” {id. [emphasis added]).
Thus, from the statute and case law, the guiding principles are perfectly plain: when potential jurors reveal knowledge or opinions reflecting a state of mind likely to preclude impartial service, they must in some form give unequivocal assurance that they can set aside any bias and render an impartial verdict based on the evidence. Obviously, when potential jurors themselves openly state that they doubt their own ability to be impartial in the case at hand, there is far more than a likelihood of bias, and an unequivocal assurance of impartiality must be elicited if they are to serve. As the First Department put it in Johnson and Sharper, the law “is clear that a prospective juror who expresses partiality towards [one side] and cannot unequivocally promise to set aside this bias should be removed for cause” (255 AD2d, at 140-141, supra). That bright-line standard is followed throughout the State (see, e.g., People v Butler, 258 AD2d 368, 369 [1st Dept 1999]; People v Taylor, 120 AD2d 325, 326 [1st Dept 1986]; People v Zachary, 260 AD2d 514 [2d Dept 1999]; People v Maddox, 175 AD2d 183 [2d Dept 1991]; People v Burdo, 256 AD2d 737, 740-742 [3d Dept 1998]; People v Butler, 221 AD2d 918 [4th Dept 1995], Iv denied 87 NY2d 971; People v Williams, 210 AD2d 914, 915 [4th Dept 1994]).
III.
Applying the law to the facts before us, we conclude that the Trial Judges erred in failing to obtain unequivocal assurances, *615 or excusing potential jurors for cause, when they openly acknowledged doubt that they could be fair in the case.
In People v Johnson and People v Sharper, where defendants were challenging the competence of the police, Prospective Juror 7 first noted he had a friend in law enforcement and then expressed his own predisposition toward police officers. While at one point he “guessed” that he could fairly evaluate their testimony, when later asked if he would “tend to favor the police testimony more than say a civilian’s testimony,” he responded “I would.” Asked again whether he would, he confirmed, “Yes.” Surely, the cherished right to an impartial jury requires more than this.
Similarly, in People v Reyes — a prosecution for sale of heroin — Prospective Juror 13 acknowledged that, as a parent, she was particularly upset by drug abuse and could “only try” to be fair and impartial, but that “a lot of emotional things” could “color [her] views” about someone selling heroin. Asked a second time whether her emotional feelings would affect her ability to be impartial, she responded “it’s difficult” and that, although defendant’s criminal record did not automatically make him guilty, it “might be difficult” for her to be open-minded. So too with respect to Prospective Juror 14, who said she “[m]aybe slightly” might have difficulty being fair and objective.
Significantly, in both instances the Trial Judge stated the applicable law correctly. As to Prospective Juror 13, in denying the challenge, he said that “she on balance indicated she could be fair in this case, that she would be open-minded. She acknowledged the information, the fact the past conviction would have in evaluating the testimony, but she indicated she could be fair.” As to Prospective Juror 14, the court noted: “She clearly indicated two times, I believe, she could be fair. Was candid in indicating it would be somewhat difficult, but she said she could be fair in this case.” Regrettably, in neither instance does the record support the Trial Judge’s recollection that, having openly expressed their doubts, these potential jurors unequivocally represented that they could be fair and impartial.
Finally, addressing the dissent, we are unanimous on the point that, in considering whether a challenge for cause should have been granted, we must look not to characterizations or snippets of the voir dire but to the full record of what the challenged jurors — sworn to speak truthfully — actually said (see, *616 dissenting opn, at 618, 620, 621). It is one thing, for example, to say that Prospective Juror 7 in Johnson and Sharper “stated that he would listen to the testimony of people who lived different lifestyles than he did, and give it the same credibility as he would give to testimony by those who lived the same lifestyle as he did” (dissenting opn, at 617-618). It is quite another thing to see his actual words regarding police testimony: “[W]ould [you] tend to favor the police testimony more than say a civilian’s testimony?” “I would.” “You would?” “Yes.” It is precisely because of the importance of the actual colloquy that we have set out the relevant record as to each of the challenged jurors.*
Ultimately, the principle is a simple one, drawn from the statute, well articulated in our cases, and overwhelmingly understood and applied by courts across the State. When potential jurors themselves say they question or doubt they can be fair in the case, Trial Judges should either elicit some unequivocal assurance of their ability to be impartial when that is appropriate, or excuse the juror when that is appropriate. The “worst the court will have done in most cases is to have replaced one impartial juror with another impartial juror” (People v Culhane, supra, 33 NY2d, at 108, n 3).
Accordingly, in People v Johnson and People v Sharper, the Appellate Division orders should be affirmed, and in People v Reyes, the Appellate Division order should be reversed and a new trial ordered.

 We all agree as well that, in the important matter of seeking an impartial jury, a trial court must afford counsel a fair opportunity to question prospective jurors, but the court has discretion to restrict the scope of voir dire. That is the purport of the cases cited by the dissent at page 619 (People v Jean, 75 NY2d 744, 745; People v Pepper, 59 NY2d 353, 358-359; People v Stanard, 42 NY2d 74, 81-82, cert denied 434 US 986; People v Boulware, 29 NY2d 135, 139, cert denied 405 US 995). That, however, is not the issue before us on this appeal.