■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHN R. HIGGINS, Appellant. [869 NYS2d 706]—

Carpinello, J.

Indicted on charges of burglary in the second degree and criminal mischief in the fourth degree stemming from allegations that he broke into a friend's third-floor apartment and found guilty as charged by a jury, defendant now appeals. He claims that County Court erred in its questioning of a prospective juror, that the in-court identification of a particular witness should have been excluded and that the verdict is against the weight of the evidence in that the People presented nothing more than "a long strand of circumstantial, unreliable evidence." We now affirm.

During voir dire, a prospective juror disclosed that her husband had previously been convicted of a crime. Defendant now argues that County Court failed to get an unqualified assurance from this juror that she could nevertheless be objective and render an impartial verdict. Having failed to object to County Court's questioning of this juror or to otherwise challenge her, the issue is unpreserved for review (*see e.g. People v Fehr*, 45 AD3d 920, 923-924 [2007], *lv denied* 10 NY3d 764 [2008]; *People v Chapman*, 229 AD2d 789 [1996]; *compare People v Johnson*, 94 NY2d 600 [2000]). Were we to review the matter, we would find that the record does not support defendant's assertion that the prospective juror was "potentially biased" because of her husband's experience with the criminal justice system or that she indicated an inability to render an impartial verdict (*see* CPL 270.20 [1] [b]). To the contrary, the prospective juror indicated that her husband was treated fairly, disavowed any animosity toward the prosecutor or defense counsel and indicated that she could set aside this event and render a fair and impartial verdict (*see People v Johnson*, 94 NY2d at 614).

We next turn to the evidence adduced at trial to evaluate defendant's claim that the verdict is against the weight of the evidence. Between 4:15 and 4:20 P.M. on December 5, 2006, Ray Bassaillon's third-floor apartment was broken into by an intruder who smashed a window overlooking a fire escape. William Corns, a tenant in the apartment building next door, and Anthony Moro, a tenant on the first-floor of Bassaillon's building, heard the smashing of glass. In response, Moro walked out into the common hallway of the building at which point he observed an individual come down the stairs and walk by him. According to Moro, he was able to get a good look at this person as the lights were on in the foyer and the person was only 1½ to 2 feet away from him. Moro identified defendant in court as being that person.

In the meantime, Corns, upon hearing the smashing of glass and observing the blue pants and beige boots of a person entering Bassaillon's apartment from the fire escape, ran outside to investigate. Shortly thereafter, he observed a man wearing blue pants and beige boots exit Bassaillon's apartment building. The two came face-to-face for a brief moment at which point the man shouted an expletive and fled. Corns pursued him. According to Corns, it was sufficiently light at the time to get a good look at this person. The pursuit eventually came to an end when the man jumped into the passenger side of a particular vehicle, which then sped away.

Bassaillon, upon hearing the description of the fleeing vehicle, suspected defendant, his friend since childhood. Thus, a day or two after the incident, Bassaillon and Corns went in search of the vehicle and located it in defendant's neighborhood, itself a short distance away. On a second trip out together, they encountered defendant on the street. At this time, Corns confirmed to Bassaillon that defendant was the person who he observed coming out of his building and who he chased. Corns also identified defendant in court. Defendant, in addition to highlighting discrepancies in these witnesses' physical descriptions of the intruder, also presented evidence that he was seen at his mother's residence at approximately 4:05 P.M. on the day in question and again between 5:05 and 5:10 P.M., and that his vehicle was not in the vicinity of the subject neighborhood during Corns' pursuit of the intruder.

Upon the exercise of our factual review power (see People v Romero, 7 NY3d 633, 643-644 [2006]; People v Bleakley, 69 NY2d 490, 495 [1987]), we reject defendant's contention that his convictions are against the weight of the evidence. While a contrary verdict would not have been unreasonable had the jury rejected the testimony of Corns and Moro based on the highlighted discrepancies and/or accepted the testimony of defense witnesses that neither defendant nor his vehicle was in the vicinity of Bassaillon's apartment during the time period in question, it was the jury's province to resolve all credibility issues. Viewing the evidence in a neutral light and according deference to the jury's "opportunity to view the witnesses, hear the testimony and observe demeanor" (People v Bleakley, 69 NY2d at 495), we conclude that the verdict finding defendant guilty as charged was not against the weight of the evidence (see CPL 470.15).

Finally, we have reviewed defendant's claim that Moro's in-court identification of defendant was based on a photograph array that was both improperly conducted and unduly suggestive and find both contentions to be without merit.

Mercure, J.P., Spain, Malone Jr. and Stein, JJ., concur. Ordered that the judgment is affirmed.