The People of the State of New York, Respondent,
 
 against
Thomas Hall, Appellant. Nassau County Legal Aid Society (Jeremy L. Goldberg and Argun M. Ulgen of counsel), for appellant.
Nassau County District Attorney (Tammy J. Smiley, Daniel Bresnahan and Adam S. Charnoff of counsel), for respondent.

Appeal from a judgment of the District Court of Nassau County, First District (Martin J. Massell, J.), rendered July 25, 2014. The judgment convicted defendant, upon a jury verdict, of endangering the welfare of a child.




ORDERED that the judgment of conviction is affirmed.
On February 11, 2011, the People charged defendant, in separate informations, with assault in the third degree (Penal Law § 120.00) and endangering the welfare of a child (Penal Law § 260.10 [1]), following an altercation between defendant and his then 15-year-old son, in which another person, Jacqueline Hill, had participated. Hill was separately charged with those offenses and her conviction, upon a jury verdict, of endangering the welfare of a child, has been affirmed (see People v Hill, 51 Misc 3d 134[A], 2016 NY Slip Op 50543[U] [App Term, 2d Dept, 9th & 10th Jud Dists 2016], lv denied 28 NY3d 931 [2016]).
Prior to a jury trial of this action, the victim and the victim's mother, Ms. Wong (defendant's former spouse), had submitted statements in Family Court in support of a petition for orders of protection against defendant, and to the police and the District Attorney's Office in relation to the criminal charges later filed against defendant. At the trial, the victim, his mother and his stepfather testified to defendant's physical confrontation with the victim at the home the victim shared with his mother, stepfather, and paternal grandmother, after which the victim had received hospital treatment. According to the witnesses, the victim's half-sister (by defendant), who did not testify at the trial, entered the house as the altercation was ending and assisted the stepfather in separating defendant from his son. Hill testified for defendant, in anticipation of which the District Court had limited her cross-examination to the fact that she had been convicted of endangering the welfare of a child and the date of that conviction. In the course of her testimony, Hill contradicted the accounts of the People's witnesses as to every salient aspect of the conduct alleged, insisted that the charge against her of endangering the welfare of a child was based on a "false accusation," and denied her guilt of that offense. The jury convicted [*2]defendant of endangering the welfare of a child and acquitted him of assault in the third degree.
On appeal, defendant argues that the District Court, in error, (1) denied his request to excuse three prospective jurors, two principal and one alternate, for cause; (2) curtailed his cross-examination of two of the People's witnesses with respect to their prior statements and other matters; (3) denied his request for a missing witness charge as to the victim's sister; and (4) permitted cross-examination of Hill as to certain of the facts underlying her prior conviction, in violation of the District Court's ruling limiting same. Defendant also contends that the evidence was legally insufficient to support the conviction, which was, in any event, against the weight of the evidence.
The defense exhausted its peremptory challenges prior to the completion of jury selection (see CPL 270.20 [2]), and, thus, a wrongful denial of a challenge for cause with respect to either of the principal prospective jurors would constitute reversible error (see People v Valdez, 138 AD3d 1151, 1153 [2016]). However, as the alternate jurors never deliberated, the issue of the wrongful denial of a challenge for cause to the prospective alternate juror is moot (see e.g. People v Haardt, 129 AD3d 1322, 1322 [2015]; People v White, 297 AD2d 587, 588 [2002]; People v Steward, 32 Misc 3d 135[A], 2011 NY Slip Op 51465[U], *2 [App Term, 2d Dept, 9th & 10th Jud Dists 2011]).
A juror must be excused for cause if he or she exhibits "a state of mind that is likely to preclude him [or her] from rendering an impartial verdict based upon the evidence adduced at the trial" (CPL 270.20 [1] [b]). "[W]hen potential jurors . . . openly state that they doubt their own ability to be impartial . . . there is far more than a likelihood of bias, and an unequivocal assurance of impartiality must be elicited if they are to serve" (People v Johnson, 94 NY2d 600, 614 [2000]; e.g. People v Biondo, 41 NY2d 483, 485 [1977]; see also People v Williams, 63 NY2d 882, 885 [1984] ["(M)ost if not all jurors bring some predispositions, of varying intensity, when they enter the jury box. It is only when it is shown that there is a substantial risk that such predispositions will affect the ability of the particular juror to discharge his [or her] responsibilities (a determination committed largely to judgment of the Trial Judge with his [or her] peculiar opportunities to make a fair evaluation) that his [or her] excuse is warranted"] [emphasis added]). Once that assurance is obtained, "the trial court has discretion to deny the challenge for cause if it determines that the juror's promise to be impartial is credible" (People v Arnold, 96 NY2d 358, 363 [2001]). A "substantial risk" of bias arises when a potential juror's statements " 'raise a serious doubt regarding the ability to be impartial' " (People v Warrington, 28 NY3d 1116, 1119 [2016] [emphasis added], quoting People v Harris, 19 NY3d 679, 685 [2012]; see also People v Chambers, 97 NY2d 417, 419 [2002]), and when examining a prospective juror's responses, a court " 'must look not to characterizations or snippets of the voir dire but to the full record of what the challenged jurors—sworn to speak truthfully—actually said' " (People v Shulman, 6 NY3d 1, 28 [2005], quoting People v Johnson, 94 NY2d at 615).
Defendant's request that prospective juror T.C. be excused for cause was properly denied. In the course of inquiry regarding the jurors' ability to follow the rules regarding the burden of proof, after two other jurors had stated they would acquit if the People failed to meet their burden, prospective juror T.C. stated: "I would find him not guilty," but added, "I would just like to see the person speak up for himself or at least explain his side," and "[i]t would be nice if I could hear from him." T.C. also stated that he "would have an emotional discomfort being a [*3]juror because of these charges and the witnesses." Asked whether it was "possible" that, if he was uncertain whether the People had met their burden of proof, defendant's failure to testify would "factor into [his] decision," T.C. replied, "No, I don't think that would factor in" (emphasis added). "Think" does not "automatically make[] a statement equivocal" (People v Chambers, 97 NY2d at 419, citing People v Blyden, 55 NY2d 73, 79 [1982]; see also People v McCombs, 47 Misc 3d 44, 47 [App Term, 2d Dept, 9th & 10th Jud Dists 2015]). Implicitly acknowledging T.C.'s unequivocal assertion of nonbias, defense counsel shifted the basis of her challenge to T.C.'s reference to "emotional discomfort." Neither the prosecutor nor defense counsel questioned T.C. further with respect to either statement, and defense counsel's sole argument in support of her request that T.C. be excused for cause was that he "would make an emotional decision." However, it would be the rare juror that did not experience "emotions" upon hearing testimony as to an alleged assault by a father on the father's 15-year-old son, and, in light of T.C.'s statements, considered as a whole, it cannot be said that the District Court abused its discretion, in effect, by ruling that T.C.'s answer to the prosecutor's question regarding emotional discomfort did not represent a "substantial risk" or raise a "serious doubt" as to his ability to be impartial (see People v Arnold, 96 NY2d at 363)."
During the questioning of prospective juror W.N., there occurred: 
"[DEFENSE COUNSEL]: . . . Do you think that in any small way if there w[ere] similarities between the testimony in this case and your own personal divorce experience, do you think that . . . may factor into your ability to be impartial?
[W.N.]: I hope that it wouldn't be, but again depending upon the facts.
[DEFENSE COUNSEL]: You would hope that it wouldn't, but you can't guarantee me that it won't?
[W.N.]: I can't." Defense counsel's argument for a dismissal for cause was that W.N. had failed unequivocally to state that he "couldn't guarantee" that "the fact that he had been divorced" would not "factor into his decision." However, W.N. discounted the risk of such partiality:
"[DEFENSE COUNSEL]: Despite your experiences do you think that you could separate what happened to you from this case or would your emotions come into play at all?
[W.N.]: I guess [it] depends on what the facts are that are presented to me. If the[y are] similar, I think that I could be fairly objective."
Indeed, if W.N.'s statements were construed to reveal a risk of partiality, if anything, it would be against the People's interests, not defendant's, and the specific issue of partiality is not of such importance as to implicate his ultimate suitability as a juror. This is not a case where, for example, the prospective juror "had a preexisting opinion concerning defendant's guilt or innocence" (People v Harris, 19 NY3d at 685), where the juror reveals that it would be difficult to be impartial because the alleged female child victim of a predatory sexual assault was in "the same age range" as the juror's own daughters (see People v Valdez, 138 AD3d at 1153), where the juror's bias "relate[s] not to the particular facts of the case but to a party" (People v Johnson, 94 NY2d at 614, citing People v Torpey, 63 NY2d 361, 368 [1984] [the juror's bias arose from knowledge of defendant's status as a suspected mafioso]), or where the juror would favor police testimony and fails unequivocally to state that he or she could evaluate such evidence fairly (see People v Johnson, 94 NY2d at 604-606; see also People v Arnold, 96 NY2d at 363; cf. People v [*4]Garrison, 30 AD3d 612, 612-613 [2006]). "[T]he determination of a prospective juror's fitness to serve is 'committed largely to [the] judgment of the Trial Judge with his [or her] peculiar opportunities to make a fair evaluation' (People v Williams, 63 NY2d [at] 885)" (People v Giuliani, 47 Misc 3d 31, 33 [App Term, 2d Dept, 9th & 10th Jud Dists 2014]). On this record, it cannot be said that the District Court abused its discretion in denying defendant's requests that T.C. and W.N. be excused for cause, as there is no basis upon which to conclude that there was a "serious doubt" whether either juror could properly serve.

We further find that the court did not improvidently exercise its discretion when it declined to permit the defense to impeach the victim with respect to certain matters omitted from his statements to the Family Court and to the police. The victim testified that defendant had "slapped a cup of ice from his hand," that defendant had stated to him that he was "wrong," that Hill had "stomped" on his fingers, and that he had suffered injury to a finger bone. There is no dispute that the victim did not personally author those statements; rather, with the assistance of his mother and stepfather, they were written out for him by a court official and a police officer, respectively, and the District Court precluded any inquiry, citing the absence of any indication that the victim had been questioned about the facts at issue. Permitted to make a record of additional matters precluded by the court, defense counsel stated that he would have inquired as to purported negative aspects of the victim's conduct at his school and home, and the omission from the Family Court petition that Hill was wearing "heels" while kicking him. Defendant also argues that he was wrongly precluded from inquiring of Ms. Wong in greater detail as to a deed to her residence, which purportedly transferred ownership of the property from defendant's mother to Ms. Wong, a document later voided by a court as fraudulent, and from admitting the deed into evidence, contending that the deed and other aspects of Ms. Wong's estranged relationship with defendant supported the defense theory of a motive to fabricate the incident on which the charges against defendant were based.
"It is well established that a witness' prior inconsistent statements may be used to impeach his trial testimony. And the test of inconsistency . . . is not limited to outright contradictions between a witness' prior statements and his trial testimony; it includes, as well, omitting to mention critical facts at the prior time, which facts are later related at trial. The weight of authority holds, however, that a witness may not be impeached simply by showing that he omitted to state a fact, or to state it more fully at a prior time. It need also be shown that at the prior time the witness' attention was called to the matter and that he was specifically asked about the facts embraced in the question propounded at trial" (People v Bornholdt, 33 NY2d 75, 88 [1973] [internal citations omitted]).
Omissions from prior statements are admissible for impeachment purposes also when "circumstances make it most unnatural to omit certain information from a statement," that is, without regard to the particular manner in which the statement was provided, whether by questioning, a narrative, or otherwise (People v Savage, 50 NY2d 673, 679 [1980] [emphasis added]; see also Jenkins v Anderson, 447 US 231, 239 [1980]). The victim's prior accounts are substantially consistent with his trial testimony, and the differences would not justify an inference of inconsistency, much less a diminishment of the victim's capacity to testify truthfully and accurately as to the underlying incident. Upon a review of the victim's prior statements, the testimony as to their making, and the scope of cross-examination based thereon, we find that any [*5]error in curtailing cross-examination as to the prior statements did not deprive defendant of a fair trial.
With respect to the limitations on cross-examination of aspects of the victim's alleged past behavior, at school or at home, it is noted that "trial courts retain wide discretion to limit cross-examination 'based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant' " (People v Ashner, 190 AD2d 238, 246 [1993], quoting Delaware v Van Arsdall, 475 US 673, 679 [1986]). The standard of review is "whether the trial court's ruling prevented an effective cross-examination" (People v Ashner, 190 AD2dat 246), as opposed, to for example, simply preventing "disparaging questions bearing on credibility but irrelevant to the issues of the defendant's guilt" (id. at 248). Considered as a whole, the record does not support an inference that the defense was prejudiced by the particular limitations on cross-examination of the victim.
Defendant further argues that, with respect to the cross-examination of the victim's mother as to "whether her legal dispute with [defendant] over the deed . . . had motivated [her] to fabricate criminal charges against [defendant]," he was improperly prevented from (1) introducing as evidence the fraudulent deed, (2) inquiring as to the determination that the conclusion of fraud was based on defendant's mother's dementia, (3) inquiring as to whether defendant and his sister had signed an eviction petition against Ms. Wong, (4) eliciting that Ms. Wong had overheard defendant and his family discussing the filing of the petition, and (5) inquiring as to whether Ms. Wong, at a hearing subsequent to the instant incident, had agreed to allow defendant to live with her and their son, all of which would tend to prove that Ms. Wong had fabricated charges against defendant.
While "extrinsic proof tending to establish a reason to fabricate is never collateral and may not be excluded on that ground" (People v Hudy, 73 NY2d 40, 56 [1988]), proof offered for that reason may properly be excluded as remote (see People v Thomas, 46 NY2d 100, 105 [1978]; People v Hines, 102 AD3d 889, 889 [2013]; People v Sawyer, 304 AD2d 775, 776 [2003]), "where [it] lacks a good-faith factual basis, [where it] is based solely on hearsay, or [where it is] . . . speculative" (People v Monroe, 30 AD3d 616, 617 [2006] [citations omitted]; see also People v Strzelecki, 108 AD3d 644, 645 [2013]). Here, the issue is not whether grounds exist for an inference of Ms. Wong's bias or hostility toward defendant, but whether the matters enumerated above were probative of the defense theory that Ms. Wong orchestrated a conspiracy involving her son, the stepfather and herself, to create a fictional account of a physical altercation involving the son, defendant, and Hill, and to coordinate those individual accounts to launch a criminal prosecution, for purposes of leverage against defendant with respect to possession of a premises in which she lives with defendant's mother, and perhaps, as revenge for a relationship with defendant that ended in acrimony. However, absent any proof in the record as to the exact basis for the deed having been set aside by the courts, proof of the actual deed would have been superfluous and without independent probative value with respect to Ms. Wong's impeachment. Given the scope of cross-examination permitted, it cannot be said that, in the circumstances, defendant's cross-examination of Ms. Wong was unfairly circumscribed. 
Defendant also contends that the District Court violated its order limiting, without objection, defendant's cross-examination of Hill to the mere fact that she had been convicted of endangering the welfare of a child and the conviction date, by permitting inquiry as to the nature [*6]of the offense, whether that offense had been based on the same incident as that underlying the charges against defendant, and whether the same witnesses appeared at both trials, thereby unduly prejudicing his attempt to interpose a defense. When the cross-examination turned to when Hill's prior conviction had occurred (December 3, 2012), asked if that date was correct, Hill replied, "No." There was no objection to the prosecutor's attempts to clarify the matter by asking whether, on a certain date, Hill was sentenced on a criminal conviction. Hill answered, "Yes," but continued to deny having previously been convicted of a crime. Asked, over objection, if she was "arrested as a result of this case," and whether a jury had found her guilty of a criminal offense, specifically of endangering the welfare of a child, Hill replied, "No." Asked, without objection, if she had been arrested as a result of "these incidents," without answering directly, Hill insisted they were based on "false accusations." By electing to present Hill as a witness to the underlying incident, knowing that the People would be allowed to question her as to what charge she had been convicted of, and anticipating that the People's witnesses would testify extensively as to Hill's conduct during the incident, the jury was likely to have inferred that Hill was convicted of one of the same offenses of which defendant was charged, even absent the additional cross-examination of which defendant complains. By denying that either she or defendant had engaged in conduct that would tend to prove the offenses charged, Hill not only repudiated the basis of her own conviction but the veracity of the People's witnesses with respect to the core of the People's case, which entitled the People to counter that testimony through further inquiry. Moreover, while impeachment by prior bad acts may, "under the usual rules of evidence," be circumscribed so as to protect a witness and a party from undue development of testimonial matters relative to their probative worth, it is also the case that "when the defendant or a witness for the defense testifies to facts that are in conflict with the precluded evidence[,] . . . the defense opens the door on the issue in question, and the witness is properly subject to impeachment by the prosecution's use of the otherwise precluded evidence" (People v Fardan, 82 NY2d 638, 646 [1993] [internal quotation marks omitted]; see also People v Massie, 2 NY3d 179, 184 [2004] ["a trial court should decide door-opening issues in its discretion, by considering whether, and to what extent, the evidence or argument said to open the door is incomplete and misleading, and what if any otherwise inadmissible evidence is reasonably necessary to correct the misleading impression"] [internal quotation marks omitted]). Here, Hill's testimony as to the "true" nature of the incident and her personal involvement therein entitled the People to impeach her false answers to the very questions that the defense conceded could be properly asked. Thus, to the extent the issue is preserved, it cannot be said that the District Court abused its discretion in permitting the extended questioning of Hill. Absent a constitutional objection to the permitted cross-examination of Hill, the applicable standard of review is nonconstitutional error (see People v Grant, 7 NY3d 421, 424 [2006]). As the proof of guilt was overwhelming, to the extent that the cross-examination may have exceeded proper bounds, we find no significant probability that the jury would have acquitted defendant had the error not occurred (see People v Crimmins, 36 NY2d 230, 241-242 [1975]).
We further find that the District Court's denial of a missing witness charge with respect to the victim's half-sister was not an abuse of discretion.
"An 'uncalled witness' or 'missing witness' charge instructs a jury that it may draw an adverse inference based on the failure of a party 'to call a witness who would normally be [*7]expected to support that party's version of events' (People v Savinon, 100 NY2d 192, 196 [2003]). . . . The preconditions for this charge, applicable to both criminal and civil trials, [are]: (1) the witness's knowledge is material to the trial; (2) the witness is expected to give noncumulative testimony; (3) the witness is under the 'control' of the party against whom the charge is sought, so that the witness would be expected to testify in that party's favor; and (4) the witness is available to that party" (DeVito v Feliciano, 22 NY3d 159, 165-166 [2013]).
The proponent of such a charge is required to preserve all substantive arguments that may support it (see CPL 470.05 [2]; People v Lopez, 19 AD3d 510, 511 [2005]; People v Simon, 6 AD3d 733 [2004]; e.g. People v Stewart, 96 AD3d 880, 881 [2012] [due diligence to obtain the witness]; People v Zimmerman, 309 AD2d 824, 824 [2003] [noncumulative testimony]; People v Porter, 268 AD2d 538 [2000] [availability and control]). Here, the only "specific arguments" (People v Lopez, 19 AD3d at 511) offered by the defense concerned whether the sister's testimony would have been cumulative and whether she was under the People's control. Thus, defendant's claims that the People had failed to exercise due diligence to produce the witness and that the witness was available to the People, are not preserved for appellate review. 
The People are not required to present every witness to an offense (see People v Buckler, 39 NY2d 895, 897 [1976]; People v Rodriguez, 275 AD2d 725 [2000]; see also People v Gonzalez, 68 NY2d 424, 427 [1986] ["the mere failure to produce a witness at trial, standing alone, is insufficient to justify (a missing witness) charge"]), and the absence of such witnesses is excused where their testimonies, however material and favorable to the People, are cumulative to evidence already presented. It is the defendant's burden to demonstrate that the testimony would have been noncumulative (e.g. People v Facey, 104 AD3d 788, 789 [2013]; People v Stewart, 96 AD3d at 881).
"Testimony is properly precluded as cumulative when it would neither contradict nor add to that of other witnesses" (Segota v Tishman Constr. Corp. of NY, 131 AD3d 851, 853 [2015], citing People v Brown, 57 AD3d 238, 239 [2008]). As the victim's half-sister's observations of and participation in the altercation were apparently limited to its final moments, concerning which no material inconsistencies are alleged, her testimony would have been cumulative. 
The defense also failed to establish that the victim's half-sister was under the People's "control." "[A] genuine inability to locate a witness will foreclose a missing witness instruction" (People v Savinon, 100 NY2d at 198]), and, here, the prosecutor informed the court that the People had consulted with the victim and his mother as to the sister's whereabouts and had been informed that the sister had been living out of state for six months to a year, that they had obtained a phone number, and that the witness had not responded to their call. Thus, the defense failed to satisfy its burden of demonstrating that the victim's half-sister was nevertheless available to the People (see e.g. People v Nazim, 55 Misc 3d 129[A], 2017 NY Slip Op 50379[U], *1 [App Term, 1st Dept, 2017] [witnesses were out-of-state visitors]; People v Stepney, 42 Misc 3d 139[A], 2014 NY Slip Op 50170[U], *2 [App Term, 2d Dept, 9th & 10th Jud Dists 2014] [parent of minors did not respond to police requests for interviews]; cf. People v Diaz, 97 NY2d 109, 116 [2001] ["pro forma request" to testify insufficient]). In People v Savinon (100 NY2d at 200), the court recognized that "control and availability can blur into one another," and considered control to concern "not . . . physical availability but rather the [*8]relationship between the witness and the parties." Here, unlike the case of a police officer or District Attorney employee, the victim's half-sister was not under the People's control. In these circumstances, the District Court did not abuse its discretion in declining to deliver the requested charge.
Viewing the evidence in the light most favorable to the People (see People v Contes, 60 NY2d 620, 621 [1983]), and indulging in all reasonable inferences in their favor (see People v Ford, 66 NY2d 428, 437 [1985]), we find that the evidence was legally sufficient to establish defendant's guilt of endangering the welfare of a child. The trial proof established "that the defendant act[ed] in a manner which [wa]s likely to result in harm to the child, knowing of the likelihood of such harm coming to the child" (People v Simmons, 92 NY2d 829, 830 [1998]). The victim's testimony set forth defendant's violent physical conduct towards him, which was corroborated by two other witnesses who saw most (the victim's mother) or part (the stepfather) of the altercation, and whose own testimonies did not contradict or vary from the victim's version in any respects that are so material as to undermine any reasonable inference of guilt. Moreover, their testimony was not "incredible or unreliable as a matter of law" (People v Calabria, 3 NY3d 80, 82 [2004]; see People v Scanlon, 52 AD3d 1035, 1039 [2008]; People v Hill, 51 Misc 3d 134[A], 2016 NY Slip Op 50543[U], *4 [App Term, 2d Dept, 9th & 10th Jud Dists 2016]).
In conducting an independent review of the weight of the evidence (see CPL 470.15 [2]; People v Danielson, 9 NY3d 342, 348 [2007]), this court accords great deference to the jury's opportunity to view the witnesses, hear their testimony, and observe their demeanor (see People v Lane, 7 NY3d 888, 890 [2006]; People v Mateo, 2 NY3d 383, 415 [2004]; People v Bleakley, 69 NY2d 490, 495 [1987]). "Any discrepancies between the complainant's prior statements . . . and the complainant's trial testimony, and any inconsistencies between the complainant's testimony and the testimony of other prosecution witnesses, were not of such magnitude as to render the complainant's testimony incredible or unreliable" (People v Scipio, 61 AD3d 899, 899 [2009]). Upon this record, it cannot be said that the jury failed to give the evidence the weight it should be accorded.\
Accordingly, the judgment of conviction is affirmed. 
GARGUILO, J.P., TOLBERT and RUDERMAN, JJ., concur.
ENTER:
Paul Kenny
Chief Clerk
Decision Date: April 12, 2018