[922 NYS2d 275]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LINA
SINHA, Appellant.

First Department, April 7, 2011

### APPEARANCES OF COUNSEL

*Joel B. Rudin*, New York City, and *Gerald L. Shargel*, New York City, for appellant.

*Cyrus R. Vance, Jr., District Attorney*, New York City (*David M. Cohn* and *Alan Gadlin* of counsel), for respondent.

### OPINION OF THE COURT

McGuire, J.

In criminal appeals, we often are asked to invoke our interest of justice jurisdiction, but for good reasons we seldom do. We exercise that authority in this case and reverse defendant's conviction for bribing a witness (Penal Law § 215.00), one of the three felony crimes for which the jury returned a guilty verdict, because the prosecution failed to fulfill basic disclosure obligations that are essential to a fair trial. We do so without regard to whether those failures affected the jury's verdict on that charge, because the prosecution failed in three separate respects to meet these constitutional obligations. Under these circumstances, we cannot leave the jury's verdict wholly undisturbed and will not endeavor to determine whether the prosecution is correct that these failures played no role in the jury's determination to convict defendant of bribing a witness.

Defendant was convicted after a jury trial of one count of second-degree sodomy (Penal Law § 130.45) and one count of third-degree sodomy (Penal Law § 130.40) for committing acts of fellatio on a minor, whom we will refer to as John Jones. In addition, the jury found defendant guilty of eight misdemeanors, four counts each of criminal impersonation in the second

degree (Penal Law § 190.25 [1]) and falsely reporting an incident in the third degree (Penal Law § 240.50 [3] [a]), based on her impersonating another person and making a series of false allegations against Jones after he, no longer a minor, ended their relationship. Although defendant also was charged with having had a sexual relationship with another minor, whom we will refer to as John Smith, the jury was unable to reach a verdict on the six counts of first- and second-degree rape relating to that alleged relationship. The jury, however, convicted defendant of bribing a witness (Penal Law § 215.00), based on her giving Smith cash and other benefits to influence his testimony when she learned, after being arrested and charged with crimes relating to her relationship with Jones, that the authorities were investigating her relationship with Smith. The court imposed the maximum sentence for the bribing a witness conviction, an indeterminate sentence with a minimum term of $2^{1}/_{3}$ years and a maximum term of seven years, and directed that the sentence run consecutively to the maximum prison terms the court imposed for the second- and third-degree sodomy convictions, concurrent sentences of, respectively, $2^{1}/_{3}$ to 7 years and $1^{1}/_{3}$ to 4 years.

On these consolidated appeals, defendant argues that certain of the prosecutors involved in this case committed numerous acts of prosecutorial misconduct. Other than the undisputed prosecutorial failures discussed below and a claim the merits of which we need not determine (the claim that the prosecutor misled the jury by arguing in summation that Smith had "no axe to grind" against defendant), we reject all the misconduct claims the merits of which were before the trial court on the CPL 440.10 motion, essentially for the reasons stated by the trial court in its comprehensive and closely reasoned written decision denying the motion (25 Misc 3d 1206[A], 2009 NY Slip Op 51988[U] [2009]). The record supports the detailed findings of fact set forth in that opinion, and there is no basis for disturbing the court's credibility determinations.

Because it bears on the sodomy convictions relating to Jones, we briefly address the merits of one of the claims of misconduct that was not before the court on the CPL 440.10 motion, the claim arising from the admission into evidence of a printout of an e-mail sent by defendant that had been recovered from the hard drive of the laptop computer belonging to her that the police seized from her apartment. In the e-mail, defendant stated that she and a person she identified only as "Alex," which is not Jones's actual first name, had "called it quits" and that

"8¹/₂ years is a long time—especially if u thought it'd be forever." The printout itself is not a "written report or document . . . concerning a . . . scientific test or experiment" (CPL 240.20 [1] [c]) that the People were required to disclose and make available to the defense prior to trial. Defendant's real claim is unfair surprise, premised on a report by a detective who analyzed the hard drive. That report and a mirror image of the hard drive were turned over to the defense prior to trial. In the report, the detective stated that he had "identified four relevant e-mails to the case" and attached those four e-mails; the "Alex" e-mail was not one of them.

■ The detective's inclusion of four e-mails he considered relevant cannot be deemed a representation by the prosecution that it did not regard any other e-mails as relevant. The better practice for the prosecution would have been to make clear either prior to or earlier in the trial that the People intended to offer into evidence the "Alex" e-mail. But especially because the better practice for the defense would have been to ask prior to or earlier in the trial which e-mails the People intended to offer into evidence, we reject defendant's claim of misconduct. We do not address the related claim concerning the "Alex" e-mail that defendant advances for the first time in her reply brief, both because it could have been raised in her main brief (*People v Adams*, 50 AD3d 433, 434 [2008], *lv denied* 10 NY3d 955 [2008]) and because it cannot in any event be reviewed on the existing record.

Of course, the prosecution is obligated by the federal and state constitutions to disclose any exculpatory information within its control that is material to guilt or punishment (*Brady v Maryland*, 373 US 83 [1963]; *People v Bryce*, 88 NY2d 124 [1996]) and any evidence material to the impeachment of prosecution witnesses, including the existence of any agreement with a witness made to induce the witness's testimony (*Giglio v United States*, 405 US 150 [1972]; *People v Novoa*, 70 NY2d 490 [1987]). Here, the prosecution timely disclosed Smith's conviction in Connecticut for possession of narcotics, the violation of probation charge against him, and the promise of the District Attorney's Office to apprise Connecticut prosecutors of his cooperation with the investigation and prosecution of this case. In addition, the prosecution timely disclosed Smith's commission of numerous criminal acts for which he had not been arrested: drug sales in New York, North Carolina and Connecticut, his use of drugs, theft and extensive misuse of a credit card

belonging to his mother's boyfriend, his involvement in a robbery in which he tied to a chair someone who owed him money for drugs, and an incident involving graffiti.

It is undisputed, however, that the People failed to disclose, until after Smith testified, certain e-mails to his mother from one or both of two assistant district attorneys involved in the prosecution. In one of the e-mails, one of the prosecutors told the mother she would "do everything in [her] power" to make Connecticut prosecutors who were prosecuting him on probation violation charges "see that [Smith] deserved a break because of what had happened to him when he was younger." In another e-mail, the prosecutors told the mother that they had arranged for Smith to receive phone privileges at the youth institution at which he was incarcerated so that he could call her. In a third e-mail, one of the prosecutors informed the mother that she had arranged to stop Smith from being transferred to an adult facility.

Preceding the belated disclosure of these e-mails, the prosecutors had apprised the defense only that the District Attorney's Office had promised to inform Connecticut prosecutors that Smith was cooperating with the investigation and prosecution of the case against defendant and that, after initially declining to take that cooperation into account, the Connecticut prosecutor had agreed to at least consider it when making the sentencing recommendation to the judge. Moreover, it also is undisputed that the People wholly failed to disclose to the defense both that Smith believed that defendant had caused him to be charged with violating probation in Connecticut and that Smith's prior criminal activities included having acted as a courier for someone by transporting guns or drugs in a paper bag.

After the e-mails to Smith's mother were belatedly disclosed, Smith was recalled to the witness stand for further cross-examination. Both Smith and his mother, who had not testified before the e-mails were disclosed, were cross-examined extensively about this impeachment evidence. Before Smith's cross-examination resumed, the court informed the jury that the prosecution had, without legal excuse, delayed disclosure of certain materials that were relevant to Smith's cross-examination. In its final charge, the court reminded the jury of the untimely disclosure of the e-mails, informed the jury that the late disclosure was "inexcusable," noted defense counsel's argument that the e-mails showed Smith's motive to lie, and instructed the jury that "in evaluating [Smith's] motive, you may consider

the fact that the disclosure was untimely and you may, but are not required to, draw an adverse inference on the motive issue against the prosecution."

We agree with the trial court that there is no reasonable possibility that these serious disclosure failures by the prosecution affected the verdict convicting defendant of the sodomy charges relating to Jones or the misdemeanor charges of criminal impersonation and falsely reporting an incident (*see People v Vilardi*, 76 NY2d 67, 77 [1990]). With respect to the misdemeanors, the evidence of defendant's guilt was so overwhelming that at trial the defense acknowledged defendant's commission of the alleged acts, thereby virtually conceding her guilt of these crimes. With respect to both the sodomy and misdemeanor convictions, the evidence, summarized as follows, fully supports the trial court's conclusion that "[Smith's] testimony was almost entirely irrelevant with respect to the[se] convictions" (2009 NY Slip Op 51988[U], *16, *supra*): Jones, who had become a police officer by the time of trial, testified consistently and in detail to a relationship with defendant that began when he was 13 years old. The trial evidence included evidence that the two had traveled together to Jamaica, when Jones was 18 years old and defendant was 34. Given Jones's testimony that the first sodomy offense occurred in the summer of 1996 and the relationship ended in December 2004, the jury had a strong reason to conclude that Jones and the "Alex" with whom defendant said she had had an $8^{1}/_{2}$-year relationship were one and the same. Jones was not impeached in any significant respect and a wealth of other evidence corroborated his testimony. Although no single item of corroboration provided compelling proof that a sexual relationship existed when Jones was a minor, as opposed to an 18 year old, the cumulative effect of the corroboration is significant, especially because of the bizarre and criminal acts defendant committed in reaction to Jones's efforts to end their relationship. On the question of whether the jury could consider the testimony of Smith when deciding whether the People had proved defendant's guilt of the sodomy charges relating to Jones, the trial court's instructions were exhaustive and clear. The court charged the jury that each count must be considered separately, that it could not "use one crime as showing a propensity or predisposition to commit another," and that if "defendant had an improper sexual relationship with one of the complainants, that is no evidence that she had such a relationship with the other."

Finally, even with respect to Smith's credibility, the impeachment value of the belatedly disclosed e-mails and the undisclosed evidence (Smith's belief that defendant had instigated the probation violation charge and his involvement as a courier) was minimal. Indeed, defendant may have been in a better position as a result of the tardy disclosure of the e-mails: there is no evidence that Smith's belief preceded his first accusation of defendant, and cross-examination about that belief could have damaged more than aided defendant; the evidence that Smith had acted as a courier was cumulative with ample other evidence reflecting poorly on his credibility; Smith had already been effectively impeached by a wealth of other evidence; and the court gave the instructions favorable to the defense noted above.

With respect to the bribing a witness conviction, however, we need not determine whether we disagree with the trial court's conclusion that there is no reasonable possibility that these disclosure failures by the prosecution affected the verdict. We need not make that determination because we, unlike the trial court, have interest of justice jurisdiction. The trial court correctly characterized the tardy disclosure of the e-mails as "inexcusable." We add that for the prosecution to fail in three distinct respects to fulfill its disclosure obligations is intolerable. Exercising our interest of justice jurisdiction, we reverse that conviction without regard to whether there is such a reasonable possibility. The interests of justice, however, would not be served by reversing the remaining convictions. In this regard, we accept the trial court's determination that this failure was not willful.

■ As defendant's conviction for bribing a witness was supported by legally sufficient evidence, we remand for a new trial on that charge. Although Smith was an accomplice as a matter of law, his testimony about the gifts and money defendant gave him in exchange for lying about their relationship was adequately corroborated (see CPL 60.22 [1]). The corroboration consisted of evidence of conduct by defendant that, while subject to innocent interpretations, supported a reasonable inference, given the surrounding circumstances, that she was seeking to persuade Smith to deny that he had any sexual relationship with her, and that she was conferring benefits upon this witness for that purpose.

Defendant's contention that the trial evidence rendered duplicitous what was then count nine of the indictment, the count

under which she was convicted of sodomy in the second degree, is not preserved for appellate review. During oral argument before the trial court, defendant objected that other counts of the indictment relating to Jones were duplicitous and advanced a different argument ("because of the matter of the grand jury presentation") in support of dismissing count nine. A close reading of the memorandum of law defendant submitted in support of her motion for a trial order of dismissal makes clear that defendant did not object that count nine was duplicitous (*see e.g.* "every oral sodomy count *after* count 9 is defective for duplicity" [emphasis added]). That memorandum, moreover, expressly states that defendant was renewing her earlier motion to dismiss "Counts 10 through 63 based upon the grand jury testimony." The memorandum of law submitted in support of the earlier motion argues that counts 10 through 63, and only those counts, are duplicitous and expressly excepts count 9 from the assertedly duplicitous sex-offense counts relating to Jones. Accordingly, defendant's appellate challenge in this regard is unpreserved for review and we decline to review it in the interest of justice.

■ As an alternative holding, we reject it on the merits. As defendant essentially conceded at trial, the count was not duplicitous as pleaded. Nor was it rendered duplicitous by Jones's testimony or by the court's charge. The first act of oral sodomy occurred under specific circumstances, about which Jones testified consistently before the grand jury and at trial. Although Jones testified to a course of sexual conduct by defendant, he made it clear that the "first" incident of oral sodomy was a specific event and was not just the beginning of a course of conduct. Similarly, when the court instructed the jury that the count at issue referred to the "first" incident, the jury could only have interpreted the instruction as referring to this particular instance (*compare People v Faux*, 99 AD2d 654 [1984], *lv denied* 62 NY2d 649 [1984]).

■ The court did not impermissibly enlarge the time frame for this count. The indictment charged that the incident occurred on or about the month of June of 1996. At trial, over 10 years later, Jones was unable to say whether it was in June, July or August of 1996. He knew it was after the regular school year had ended, and he was in summer school. Given that Jones was 13 years old at the time of the incident, and did not report the crime for many years, the three-month period was not an unreasonably large time frame, and there is no reason to believe

the People could have further narrowed it (*see People v Keindl*, 68 NY2d 410, 418-420 [1986]). This amendment, purely as to date, did not change the People's theory or cause any prejudice to defendant (*see* CPL 200.70 [1]). The fact that the indictment contained other counts relating to sex acts in July and August, which were never submitted to the jury, is of no consequence.

■ Nor was the count of the indictment under which defendant was convicted of third-degree sodomy duplicitous. This count charged defendant with committing an act of oral sodomy in November 1996 (*see People v Schwartz*, 7 AD3d 445, 445 [2004], *lv denied* 3 NY3d 662 [2004] [indictment not defective where each count alleged a single incident falling within a specific one-month period]). Jones testified that during a longer period of time that included November 1996 (i.e., when he was in ninth grade), defendant performed oral sex on him "every month, at least one time every month, more than that." In addition, he answered "yes" when asked whether defendant's mouth was on his penis "during those occasions" in November 1996. Consistent with the instructions given to the grand jury* on this count, the trial court instructed the jury that it was "to consider only the first time the act is alleged to have occurred in the month of November of 1996." Thus, unlike the jury in *People v Beauchamp* (74 NY2d 639, 641 [1989]), a case upon which defendant relies, the jury here could not have found defendant guilty based on a "continuous course of conduct."

■ Moreover, because Jones did not testify to any specific act of oral sodomy in November 1996, the guilty verdict could not have violated the requirement of a unanimous verdict (*see Keindl*, 68 NY2d at 418) by creating a risk that some jurors concluded that a particular act of oral sodomy that month had been proven beyond a reasonable doubt while others concluded that a different act of oral sodomy that month had been so proven. Defendant argues that "the jury could not find there was a 'first time' without finding there was more than one time" and thus that she was "tried for an ongoing course of conduct, not for any discrete act." The premise, however, is incorrect: if an act is committed for the first time, it does not follow that it necessarily must have been committed a second time. In any event, given the court's instructions and Jones's nonspecific testimony that defendant had committed at least one act of oral

---

* Although the grand jury minutes were, of course, before the trial court, the People nonetheless have moved (M-4038) to enlarge the record on appeal to include them.

sodomy every month, the possibility that defendant may be guilty of having committed two or more acts of oral sodomy in November 1996 does not render duplicitous the count charging him with one such act for which the jury found him guilty.

The court responded meaningfully to a jury note, and there is nothing in the note or the circumstances of the case to suggest that the court was obligated to go beyond the note and provide an instruction on the law that the jury never requested (*see People v Almodovar*, 62 NY2d 126, 131-132 [1984]; *People v Garcia*, 309 AD2d 514 [2003], *lv denied* 1 NY3d 572 [2003]).

■ The court properly denied defendant's mistrial motion made when the deliberating jury accidentally received an unredacted tape recording containing excluded evidence. The court provided a suitable curative instruction, which the jury is presumed to have followed (*see People v Davis*, 58 NY2d 1102, 1104 [1983]; *People v Santiago*, 52 NY2d 865 [1981]). Furthermore, the excluded material was insignificant, as well as cumulative to other evidence, and there is no reasonable possibility that it affected the verdict.

All of defendant's arguments raised on the direct appeal relating to the prosecutor's summation are unpreserved and we decline to review them in the interest of justice. As an alternative holding, we also reject them on the merits. Putting aside the issue of whether there is any merit to defendant's argument that the prosecution misled the jury by arguing in summation that Smith had "no axe to grind" against her, the evidence developed at the CPL 440.10 hearing does not establish that anything else in the summation was false or misleading. We need not determine whether there is any merit to the one argument since defendant would not be entitled to any additional relief in any event.

As for defendant's arguments that the sentences imposed are excessive, our reversal of the bribing a witness conviction renders moot the argument premised on the court's determination to direct the sentence for that count to run consecutively with the concurrent sentences for the sodomy counts. We perceive no basis for reducing the sentences for the sodomy and misdemeanor convictions; defendant's argument that she should in any event be resentenced before a different judge is without merit.

To the extent not addressed, defendant's remaining arguments either are meritless or warrant no relief.

Accordingly, the judgment of Supreme Court, New York County (Carol Berkman, J.), rendered April 19, 2007, convicting defendant, after a jury trial, of sodomy in the second and third degrees, bribing a witness and four counts each of criminal impersonation in the second degree and falsely reporting an incident in the third degree, and sentencing her to an aggregate term of 4$^2$/$_3$ to 14 years, should be modified, in the interest of justice, to the extent of vacating the conviction of bribing a witness, the matter remanded for a new trial on that charge, and otherwise affirmed, and the matter remanded for further proceedings pursuant to CPL 460.50 (5). The order of the same court and Justice, entered on or about September 8, 2009, which denied defendant's CPL 440.10 motion to vacate the judgment, should be modified, in the interest of justice, to the extent of vacating the conviction of bribing a witness, and the matter remanded for a new trial on that charge, and otherwise affirmed.

SAXE, J.P., SWEENY, RENWICK and FREEDMAN, JJ., concur.

Judgment, Supreme Court, New York County, rendered April 19, 2007, modified, in the interest of justice, to the extent of vacating the conviction of bribing a witness, the matter remanded for a new trial on that charge, and otherwise affirmed, and matter remanded for further proceedings pursuant to CPL 460.50 (5). Order, same court, entered on or about September 8, 2009, modified, in the interest of justice, to the extent of vacating the conviction of bribing a witness and the matter remanded for a new trial on that charge, and otherwise affirmed.

Motion to enlarge the record on appeal granted.