■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MANUEL RIVERA, Also Known as ANGEL RIVERA, Appellant. [821 NYS2d 569]—

Judgment, Supreme Court, New York County (Rena K. Uviller, J.), rendered February 5, 2003, convicting defendant, upon his guilty pleas, of unlawful wearing of a body vest and bail jumping in the second degree, and sentencing him to concurrent prison terms of 2 to 4 years and 1½ to 3 years, respectively, unanimously affirmed. Judgment, same court and Justice, rendered July 29, 2003, convicting defendant, after a jury trial, of two counts of criminal possession of a weapon in the third degree (Penal Law § 265.02 [3] [defaced weapon]), two counts of criminal possession of a weapon in the third degree (Penal Law § 265.02 [4] [loaded firearm]), and one count of unlawful wearing of a body vest, and sentencing him, as a persistent violent felony offender, to concurrent prison terms aggregating 20 years to life, to run consecutively to the sentences on the guilty plea convictions, affirmed.

During the first round of voir dire, one of the prospective jurors informed the court that she had been mugged three times, once at gunpoint, and that no one had been apprehended. The court advised her that the instant case did not involve a robbery, and asked whether she would be able to be objective, to which she responded: "I think I could try very hard, but I do belong to two gun control groups." The following colloquy took place:

"THE COURT: That's another story. How people feel about gun control, it's against the law in this state to—under any circumstances to own a gun, to possess a gun. That's the law. And you have to apply it, but I just have to be sure that your feelings about guns are not going to influence you. In other words, if the People can't prove that this man either possessed them, he's got to be acquitted. Do you understand that? Do you feel you can be objective?

"[PROSPECTIVE JUROR]: Yes, if it's proven.

"THE COURT: If it's not proven?

"[PROSPECTIVE JUROR]: Yes.

"THE COURT: You would be able to?

"[PROSPECTIVE JUROR]: Yes.

"THE COURT: Do you have any reservation about that?

"[PROSPECTIVE JUROR]: I advocate against, you know."

Subsequently, the court instructed the panel that defendant must be presumed innocent and that the People bear the burden of proving guilt beyond a reasonable doubt. When specifically asked for her assurance that, if selected, she would follow those rules, the prospective juror replied in the affirmative.

She later stated that she would be the keynote speaker at an "industry conference" the following Friday, which she would "hate" to miss, although her company would be able to find a replacement. The court inquired whether the prospective juror would "just vote one way or the other" in order to conclude the trial in time for her conference, but she asserted that she would render "fair process."

Defendant challenged the juror for cause, on the grounds that the case fell within the "political agenda" of her gun control groups and she was preoccupied by her professional engagements. The court denied the challenge, citing the juror's unequivocal responses that she would be able to follow the law and acquit if the case were not proven and that she would not render a verdict solely to suit her personal time schedule. Defendant exercised a peremptory challenge.

In the third round of jury selection, the following transpired with a different prospective juror:

"[PROSPECTIVE JUROR]: This may be an irrelevant comment, but I am impacted by the combination of charges. Just the bulletproof vest plus the guns make it more complex. Contriveness [sic], if that's what the basis is that we are trying—contriveness [sic] in charge, it may impact that. I may go in with the burden of proof shifted to the defense as opposed to the prosecutor.

"THE COURT: Let me say this, I can well appreciate that the fact that there are two weapons that are charged and the vest that are charged, but really the question is could you just wait to hear what it's all about before you decide?

"[PROSPECTIVE JUROR]: Well, I can try to. I'm just telling you that in my mind it has—there is—I foresee being impacted very much by things I stated and that the burden might be a little bit gray.

"THE COURT: The burden really has to be on the prosecutor. It really does. They may prove it and it be clear to you. You may be left with a reasonable doubt about one charge or another charge or all three—

"[PROSPECTIVE JUROR]: That may be the case.

"THE COURT:—as you don't have to be, [sir]. You don't have to decide equal on all three. You can be not guilty on all three; guilty on all three; guilty on one, not on the other. Or vice versa. You understand?

"[PROSPECTIVE JUROR]: I understand, and I would try to do the best I could. I'm trying to be forward for your benefit. . . .

"THE COURT: All right. Just to clarify . . . the fact that there are multiple charges, can you remain open to deciding whether any one of them the prosecutor has or has not proved against?

"[PROSPECTIVE JUROR]: I believe I can, and I will certainly try to do that."

Defendant challenged the juror for cause, contending that he never gave an unequivocal assurance that he would not shift the burden of proof. The court denied the challenge, finding that the juror was "trying to be as candid as he possibly could, but ultimately . . . gave . . . an unequivocal assurance." Defendant exercised a peremptory challenge, and thereafter exhausted all his remaining peremptory challenges.

The first prospective juror at issue on appeal unequivocally stated that she would be objective, follow the court's instructions on the law, acquit if the People failed to prove their case beyond a reasonable doubt, and not be distracted by any professional commitments or fail to give the case her full attention. Accordingly, defendant's challenge for cause was properly denied (*see People v Ciochenda*, 17 AD3d 248, 248-249 [2005], *lv denied* 5 NY3d 760 [2005]).

With respect to the second prospective juror's use of the terms "try" and "believe," they are not "talismanic word[s] that automatically make[ ] a statement equivocal" (*People v Chambers*, 97 NY2d 417, 419 [2002]), and the trial court, evaluating " 'the whole examination of the juror, including his appearance and demeanor' " (*People v Shulman*, 6 NY3d 1, 27 [2005], *cert denied* 547 US —, 126 S Ct 1623 [2006]), determined that he was "trying to be as candid as he possibly could, but ultimately" gave an unequivocal assurance of impartiality. Therefore, the challenge to that juror was also properly denied.

As the Court of Appeals has repeatedly advised, "when a prospective juror qualifies a 'yes' or 'no' response regarding the ability to be fair with words such as 'I think' or 'I'll try,' an additional question or two at voir dire would easily dispel any

doubt as to equivocation, assure an impartial jury, and avoid the delay, and risk, of appeals" (*Chambers*, 97 NY2d at 419). Nevertheless, those cautionary words merely outline the better practice, and do not set forth a requirement that only a "yes" or "no" response will suffice, as the dissent would require in this instance. On the other hand, we disagree with the concurrence that "an honest juror could not say much more" than the juror at issue. An honest juror can be definitive in his responses, either unprompted or when pressed by the trial court with "an additional question or two." Indeed, in *Shulman*, relied on by the concurrence, the prospective juror who initially used the words "think" and "try" in describing her ability to set aside a preexisting opinion, answered, when probed by the trial court, with a resounding "[a]bsolutely" (*Shulman*, 6 NY3d at 28).

The trial court providently exercised its discretion in denying defendant's motion for a mistrial, after a witness blurted out on cross-examination that a friend of defendant had tried to rape her, and instead immediately striking the answer and directing the jurors to disregard it (*see People v White*, 297 AD2d 587, 588 [2002], *lv denied* 99 NY2d 565 [2002]). The remark did not implicate defendant, and in any event, the testimony of the other witnesses provided overwhelming circumstantial evidence of guilt.

Defendant's constitutional challenge to the statutory procedure pursuant to which he was adjudicated a persistent violent felony offender is unpreserved for review (*see People v Lloyd*, 23 AD3d 296, 297 [2005], *lv denied* 6 NY3d 755 [2005]), and we decline to review it in the interest of justice. Were we to review it, we would reject it. In light of all the circumstances, the sentence was not excessive, and we decline to reduce it in the interest of justice. Concur—Buckley, P.J., Marlow and Catterson, JJ.

McGuire, J., concurs in a separate memorandum as follows: The issue that divides this Court reduces to the significance of eight words—"and I will certainly try to do that"—spoken by a prospective juror in response to a question posed to him by the trial court. As discussed below, these eight words did not undermine the "unequivocal assurance" of impartiality given by the prospective juror in the immediately preceding words.

During the third round of voir dire, a prospective juror, R.P., indicated his apartment had been burglarized and his car vandalized. He stated, however, that these experiences would not interfere with his objectivity. The trial court instructed the jury on the presumption of innocence and the People's burden of proof. R.P. assured the court he had no "reservation about any of these issues."

Thereafter, the following occurred when defense counsel questioned the jurors:

"COUNSEL: In an assault case you see pictures and in a murder case you see pictures of a corpse and things like that. Who wouldn't have a visceral reaction to a corpse[?] But that does not automatically render you unfair.

"I guess what I'm asking, as you appear to be doing, is to look inside yourself and just be, you know, as honest as possible and say whether or not you think that the reaction will cloud your ability to presume him innocent, because that's what I'm concerned with, presumed innocence throughout the course of the trial.

"Until twelve jurors come back and say he's guilty, he's presumed innocent, okay?

"So—but I'm concerned that a juror might see these guns and it's going to impact their promise to presume him innocent. I don't think there is anything wrong with a person saying they are going—I'm—That's going to impact them. That standing alone is a human reaction. So do you have any comments in light of that? . . .

"Can I just ask everybody, look inside yourself. There is nothing wrong with saying, you know, yes, I'm going to have a visceral reaction to that. I don't know that that standing alone is going to allow you to presume him innocent, just seeing the guns there alone.

"Yes, [R.P.]

"[R.P.]: This may be an irrelevant comment, but I am impacted by the combination of charges. Just the bulletproof vest plus the guns make it more complex. Contriveness [sic], if that's what the basis is that we are trying—contriveness [sic] in charge, it may impact that. I may go in with the burden of proof shifted to the defense as opposed to the prosecutor.

"THE COURT: Let me say this, I can well appreciate that the fact that there are two weapons that are charged and the vest that are charged, but really the question is could you just wait to hear what it's all about before you decide?

"[R.P.]: Well, I can try to. I'm just telling you that in my mind it has—there is—I foresee being impacted very much by things I stated and that the burden might be a little bit gray.

"THE COURT: The burden really has to be on the prosecutor. It really does. They may prove it and it be clear to you. You may be left with a reasonable doubt about one charge or another charge or all three—

"[R.P.]: That may be the case.

"THE COURT:—as you don't have to be, ma'am [*sic*]. You don't have to decide equal on all three. You can be not guilty on all three; guilty on all three; guilty on one, not on the other. Or vice versa. You understand?

"[R.P.]: I understand, and I would try to do the best I could. I'm trying to be forward for your benefit."

Shortly thereafter, the trial court sought clarification from R.P.:

"THE COURT: All right. Just to clarify, Mr. P., the fact that there are multiple charges, can you remain open to deciding whether any one of them the prosecutor has or has not proved against?

"[R.P.]: I believe I can, and I will certainly try to do that."

Defense counsel challenged R.P. for cause, urging "he never gave an unequivocal response . . . about whether or not he could avoid shifting the burden." The trial court denied the challenge, stating, "I believe he was clear in his ability to—I—he was a very thoughtful person who [was] sort of trying to be as candid as he possibly could, but ultimately I believe he gave us an unequivocal assurance. It's denied for cause. You have an exception."

As this colloquy demonstrates, the trial court was not laboring under any misapprehensions about the governing law. Although R.P. did not express partiality to one side or the other, he did state that the combination of the charges "may" have certain untoward effects. As he put it, "I may go in with the burden of proof shifted to the defense." Of greater concern, moreover, was his statement "I foresee being impacted very much by [the] things I stated," even though he went on to state only that as a result "the burden might be a little bit gray." Under these circumstances, R.P. could not serve on the jury unless he gave "some unequivocal assurance" that he was "able to reach a verdict based entirely upon the court's instructions on the law" (*People v Bludson*, 97 NY2d 644, 646 [2001]).

Whether the trial court correctly concluded that R.P.'s statement, "I believe I can, and I will certainly try to do that," was such an "unequivocal assurance" is the ultimate issue on this appeal. Although the trial court was correct for numerous reasons, a simple one is central to my analysis: an honest juror could not say much more, and a hesitant juror could say much less.

In the first place, R.P.'s statement was, by its express terms, an expression of his subjective confidence that he would be able to follow the court's instructions on the burden of proof and

"remain open to deciding whether any one of [the charges]" was proven by the prosecution. This statement about his state of mind is precisely what the law requires of a prospective juror from whom an "unequivocal assurance" is sought (*see People v Biondo*, 41 NY2d 483, 484, 485 [1977], *cert denied* 434 US 928 [1977] [noting that under the former Code of Criminal Procedure, "the taint of 'actual bias' could be removed if the prospective juror 'declare on oath, that he *believes* that such opinion or impression will not influence his verdict, and that he can render an impartial verdict according to the evidence' " (emphasis added)]).

R.P.'s statement, moreover, was not cast in the kind of "I-think-so" or "I-think-I-can" terms that, as the Court of Appeals has repeatedly made clear, do not "automatically make[ ] a statement equivocal" (*People v Chambers*, 97 NY2d 417, 419 [2002]; *see also People v Shulman*, 6 NY3d 1, 28 [2005], *cert denied* 547 US —, 126 S Ct 1623 [2006]). His unqualified statement about what he believed, accordingly, compares favorably with statements that have been recognized as "unequivocal assurances" despite the possible subjective uncertainty that their terms suggest. Whether any given statement of assurance is unequivocal, in short, is a comparative matter. Again, the critical point is that an honest juror could not say much more than R.P.

There is another reason, one repeatedly identified by the Court of Appeals, to uphold the trial court's conclusion that R.P. had given the requisite "unequivocal assurance." In *People v Shulman* (6 NY3d at 27) the Court had this to say in upholding the trial court's denial of a challenge for cause to a prospective juror: "As we observed long ago, 'it was for the [trial] court to say, from the whole examination of the juror, including his appearance and demeanor, whether he was fit and competent to perform fairly and impartially' (*People v Carolin*, 115 NY 658, 659 [1889]; *see also People v Johnson*, 94 NY2d 600, 613 [2000] [determination of whether prospective juror is qualified is 'committed largely to judgment of the Trial Judge with his peculiar opportunities to make a fair evaluation' . . . ])."

This principle applies here with particular force. After all, in denying the challenge for cause the trial court made clear it was impressed by R.P. generally, stating, "he was a very thoughtful person who [was] sort of trying to be as candid as possible." In addition, in determining whether the words used by a prospective juror provide sufficient assurances of the juror's impartiality, the words "must be taken in context. A hollow incantation, made without assurance or certitude, is not enough" (*People v Blyden*, 55 NY2d 73, 78 [1982]). Although the cold appellate

record does not of course reveal anything about R.P.'s tone, nothing in the record suggests his "I-believe-I-can" statement was hollow. To the contrary, even putting aside the absence of any contemporaneous claim to that effect from defendant, the trial court's immediate conclusion ("I believe he gave us an unequivocal assurance") supports the conclusion that it was not spoken in a hollow manner.

That conclusion is all the more vibrant when R.P.'s "I-believe-I-can" statement is "taken in context" (*id.*). After forthrightly expressing his concern that he foresaw "being impacted very much" by the combination of the weapon and vest charges so that "the burden might be a little bit gray," the trial court did exactly what the law requires. That is, it followed up, and did so repeatedly. First, it instructed R.P. that the "burden really has to be on the prosecutor. It really does." After going on to emphasize that he could be left with a reasonable doubt on one or all the charges, the court asked R.P. if he understood that a verdict on one count did not require the same verdict on any other count, R.P. responded, "I understand, and I would try to do the best I could." Of course, someone can try earnestly to do something he believes he cannot do. Doubtless for this reason, the trial court returned yet again to R.P. and sought his assurance that he could "remain open" to deciding whether any of the charges had been proven by the prosecutor.

That is the context of R.P.'s "I-believe-I-can" statement. And the vital point is that it was preceded by focused questions and instructions on the relevant law. Particularly given that the record makes clear that the trial court was fully familiar with the requirements of the law in this situation, it is only reasonable to conclude that its instructions and questions were spoken in tones commensurate with the importance of the principles and concerns she was communicating to R.P. For these reasons, the mere possibility that, if pressed further, R.P. might have been able to profess certitude does not detract from the unequivocal nature of the assurance that he did provide.

At oral argument, defendant's appellate counsel acknowledged that if R.P. had stopped after stating "I believe I can," defendant could not prevail on this claim of error. Counsel's concession reflects only candor, not a lack of zeal or an ill-considered slip. Nor is counsel persuasive in contending that the next words spoken by R.P. undermined the "unequivocal assurance" he had just given. R.P. went on to say only, "I will certainly try to do that." If discouraging the service of "thoughtful" and "candid" jurors is not desirable, disqualifying a prospective juror for failing to profess a certitude of success that he or she could not

reasonably have would itself be unreasonable. Indeed, "[w]ere the rule otherwise, it would be difficult not to require the discharge . . . of every potential juror who disclosed anything but total absence of prejudice . . . , notwithstanding his stated readiness to lay his feelings aside in the discharge of his duties as a juror" (*People v Williams*, 63 NY2d 882, 885 [1984]).

That R.P. expressed such a readiness is clear as well from the adverb he used. But even if he had not said he would "certainly" try to do what he stated he believed he could do, there is no basis for concluding that the assurances he gave were other than unequivocal. Obviously, the tone of his statement could have ranged from begrudging to enthusiastic. The trial court did not expressly find that it was spoken with enthusiasm, but a contrary conclusion is not consistent with the deference appellate courts owe to the trial court (*see e.g. People v Shulman*, 6 NY3d at 27).

The dissent correctly observes both that "the full record of what the juror actually said . . . must be considered" and that "the use of terms such as 'believes' or 'try' do not automatically make a statement equivocal." For the reasons stated, the entire voir dire of R.P. supports the trial court's conclusion that he did give the requisite unequivocal assurance. The dissent states that "[i]n a matter where someone faces the loss of his liberty, we should not strain to justify the improper denial of a challenge for cause." Of course we should not so strain, just as we should not strain to overturn the proper denial of a challenge for cause. In any event, the importance of a defendant's liberty interest is not deprecated by recognizing that the People have an important interest at stake as well.

Although the majority states that it disagrees with my position that "an honest juror could not say much more" than R.P., it is not clear why the majority disagrees or even that it does disagree. After all, the majority expressly acknowledges that what R.P. ultimately said in response to the trial court's inquiries constituted an unequivocal assurance of impartiality. On the majority's own analysis, accordingly, the "more" (i.e., the profession of certitude) that it believes R.P. could have added would not have been significant. The majority's sweeping assertion that "[a]n honest juror can be definitive in his responses" is wrong. Some and perhaps many or even most jurors will not be able to profess certitude about what their state of mind will be and what they will be able to do. Indeed, a juror's honesty can be manifested precisely by his or her reluctance or inability to be definitive about such matters. No decision of the Court of Appeals holds or suggests otherwise. In this regard, the

majority's reliance on *Shulman* (6 NY3d at 28 [2005]) is misplaced. The question to which the juror responded "absolutely" did not ask her to express subjective certainty about her ability to be fair. Rather, the juror was asked "if she would want a juror with her 'state of mind' to sit on a case in which either she or a loved one was on trial" (*id.*). But the more important point is this: because some jurors honestly may be able to express certitude about what their state of mind will be, it hardly follows that all honest jurors can be similarly definitive. Nor, for that matter, does it follow that any given juror's profession of certitude is particularly meaningful. In sum, I see no basis for the majority's second-guessing of the trial court.

I agree with the majority's discussion of defendant's other contentions.

Sweeny, J., dissents in a separate memorandum as follows: I respectfully dissent. I disagree with the majority that the prospective juror at issue showed either by word or in "context" that he could be impartial.

During the third round of jury selection, in response to the court's instructions regarding burden of proof and presumption of innocence, a potential juror stated that he had no "reservation about any of these issues." However, upon questioning by defense counsel, the juror stated that the impact of the combination of the charges in the indictment may cause him to go into deliberations "with the burden of proof shifted to the defense as opposed to the prosecutor." The court, after further explanation, asked the potential juror if he could "wait to hear what it's all about before you decide." The juror responded that he could "try to." The court then asked the juror if he understood that a different verdict could be reached on each charge and he replied: "I understand, and I would try to do the best I could." The court once again addressed the issue of multiple charges and asked the juror if he could "remain open to deciding whether any one of them the prosecutor has or has not proved" and the juror responded: "I believe I can, and I will certainly try to do that."

Defense counsel challenged the juror for cause on the basis that he "never gave an unequivocal response" about whether he could avoid shifting the burden of proof to the defense. The court denied the challenge for cause on the basis that the juror gave unequivocal assurance that he could. Defense counsel exercised a peremptory challenge against the juror, exhausting all his peremptory challenges by the end of that round of jury selection.

"[W]hen potential jurors reveal knowledge or opinions reflect-

ing a state of mind likely to preclude impartial service, they must in some form give unequivocal assurance that they can set aside any bias and render an impartial verdict based on the evidence," or the juror must be excused for cause (*People v Johnson*, 94 NY2d 600, 614 [2000]; *People v Nicholas*, 98 NY2d 749, 751-752 [2002]). In reviewing this determination, the full record of what the juror actually said, not characterizations of the juror's statements, must be considered by an appellate court (*see Johnson* at 615-616).

The Court of Appeals has distinguished between actual bias, where a juror has a prejudicial state of mind as to the guilt of the defendant, and general bias. Where there is a prima facie showing of actual bias, a prospective juror "must expressly state that his prior state of mind . . . will not influence his verdict, and . . . that he will render an impartial verdict based solely on the evidence" (*People v Biondo*, 41 NY2d 483, 485 [1977]). On the issue of general bias, the Court of Appeals has observed: "We assume that most if not all jurors bring some predispositions, of varying intensity, when they enter the jury box. It is only when it is shown that there is a substantial risk that such predispositions will affect the ability of the particular juror to discharge his responsibilities . . . that his excuse is warranted" (*People v Williams*, 63 NY2d 882, 885 [1984]).

The juror in question advised the court that the nature and combination of charges might cause him to shift the burden of proof to the defense. During the colloquy with defense counsel and the court, he stated that he believed he could decide the charges individually and would "certainly try to" remain open to deciding whether or not the prosecutor proved each of the charges.

I agree with the majority that the use of terms such as "believes" or "try" do not automatically make a statement equivocal (*People v Shulman*, 6 NY3d 1, 28 [2005], *cert denied* 547 US —, 126 S Ct 1623 [2006]). However, reading this potential juror's response as a whole (*Johnson, supra*), his reservations about his ability to keep the burden of proof on the People and render separate verdicts on each count of the indictment required the trial court to elicit an unequivocal assurance from him that he would be able to reach a verdict based entirely upon the evidence presented and the court's instructions on the law (*People v LaValle*, 3 NY3d 88, 103 [2004]). This assurance should have been "voiced with conviction" as "[a] hollow incantation, made without assurance or certitude, is not enough" (*People v Blyden*, 55 NY2d 73, 78 [1982]). It is here that I must part company with my colleagues in the majority.

This prospective juror never unhesitatingly gave an assurance that he could render a separate verdict on each count without shifting the burden of proof to the defendant. While his responses indicated he would "do the best [he] could," his answers never unequivocally dispelled any doubt about his impartiality (*see People v Taylor*, 120 AD2d 325 [1986]). In a matter where someone faces the loss of his liberty, we should not strain to justify the improper denial of a challenge for cause. Where there exists "any doubt about a prospective juror's impartiality, trial courts should err on the side of excusing the juror, since at worst the court will have 'replaced one impartial juror with another' " (*People v Arnold*, 96 NY2d 358, 362 [2001], quoting *People v Culhane*, 33 NY2d 90, 108 n 3 [1973]).

As a result, this prospective juror should have been excused. The failure to do so requires reversal and remand for a new trial, "[d]espite the fact that the subsequent trial produced legally sufficient evidence of guilt and a verdict abundantly supported by the weight of the evidence" (*People v Brown*, 295 AD2d 184, 186 [2002]).