People v Dirschberger (2020 NY Slip Op 03953)





People v Dirschberger


2020 NY Slip Op 03953


Decided on July 16, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: July 16, 2020

110920

[*1]The People of the State of New York, Respondent,
v
Albert Dirschberger, Appellant.

Calendar Date: June 10, 2020

Before: Garry, P.J., Clark, Mulvey, Aarons and Colangelo, JJ.


E. Stewart Jones Hacker Murphy LLP, Troy (Julie A. Nociolo of counsel), for appellant.
P. David Soares, District Attorney, Albany (Vincent Stark of counsel), for respondent.



Mulvey, J.
Appeal from a judgment of the Supreme Court (McDonough, J.), rendered April 12, 2019 in Albany County, upon a verdict convicting defendant of the crimes of rape in the third degree and criminal sexual act in the third degree.
In December 2017, defendant was the Commissioner of Social Services of Erie County and the victim was an employee of that agency. Defendant was charged by indictment with rape in the third degree (see Penal Law § 130.25 [3]) and criminal sexual act in the third degree (see Penal Law § 130.40 [3]), based on the victim's allegations that defendant sexually assaulted her while they were staying at a hotel in Albany County for a work-related conference. Following a trial, the jury found defendant guilty on both counts. Supreme Court sentenced him to a prison term of three years with 10 years of postrelease supervision for his conviction of rape in the third degree and to a consecutive prison term of two years and 10 years of postrelease supervision for his conviction of criminal sexual act in the third degree, resulting in an aggregate sentence of five years in prison and 10 years of postrelease supervision. Defendant appeals.
Supreme Court did not err in denying defendant's motion to preclude testimony regarding the victim's intoxication on the night of the incident. Defendant alleges that by permitting this testimony, the court allowed the People to introduce evidence as to charges for which he was never indicted — namely, rape in the first degree and criminal sexual act in the first degree, which are committed when the prohibited sexual conduct occurs with a person who is "incapable of consent by reason of being physically helpless" (Penal Law §§ 130.35 [2]; 130.50 [2]). In contrast, the charged crimes, as alleged in the indictment, required proof that defendant had sexual intercourse and placed his mouth on the victim's genitals without her consent, "where such lack of consent is by reason of some factor other than incapacity to consent" (Penal Law §§ 130.25 [3]; 130.40 [3]). "To evaluate lack of consent in this context, the jury must determine whether the victim, by words or actions, clearly expressed an unwillingness to engage in the sexual act in such a way that a neutral observer would have understood that the victim was not consenting" (People v Perry, 154 AD3d 1168, 1169 [2017] [internal quotation marks, brackets and citations omitted]; see Penal Law § 130.05 [2] [d]; People v Worden, 22 NY3d 982, 984-985 [2013]).
The evidence regarding the victim's intoxication completed her narrative and allowed her to fully testify as to the events of the night as she remembered them (see e.g. People v Ramirez, 180 AD3d 811, 812 [2020]; People v Martinez, 127 AD3d 606, 607 [2015], lv denied 27 NY3d 967 [2016]; People v Jones, 101 AD3d 1482, 1483 [2012], lv denied 21 NY3d 1017 [2013]). Despite her lack of memory of portions of that night, the victim could not say why she was unable to remember parts of the night or whether she had lost consciousness. The People acknowledged that this lack of proof prevented them from charging higher degrees of the crimes, and that they did not intend to argue that the victim was incapacitated (compare People v Grega, 72 NY2d 489, 496-498 [1988]). Rather, as to the element of lack of consent, the People focused their arguments on proof that the victim actively said no, told defendant to stop and tried to pull away from him. Although the victim testified that she "woke up" and "came to" during the attack, her testimony that she had expressed her unwillingness to engage in sexual activity through both words and actions negates an inability to communicate her unwillingness to the acts — an essential element of rape in the first degree and criminal sexual act in the first degree (see Penal Law §§ 130.35 [2]; 130.50 [2]; compare People v Worden, 22 NY3d at 983-985). Moreover, Supreme Court properly instructed the jury regarding the counts at issue, noting that the element of lack of consent required that the victim clearly expressed her unwillingness; the charge did not permit the jury to consider lack of consent due to incapacity. Furthermore, contrary to defendant's argument, he is not in jeopardy of future prosecution for rape in the first degree or criminal sexual act in the first degree based on this incident (see CPL 40.20 [2] [a]-[b]).
Supreme Court did not err in denying defendant's challenge of a prospective juror for cause. Either party may challenge a prospective juror for cause where "[h]e [or she] has a state of mind that is likely to preclude him [or her] from rendering an impartial verdict based upon the evidence adduced at the trial" (CPL 270.20 [1] [b]). "If a prospective juror makes statements that raise a serious doubt regarding his or her ability to be impartial, the trial court should conduct a follow-up inquiry regarding the preexisting opinion and must excuse the juror unless he or she states unequivocally on the record that he or she can be fair and impartial" (People v Jackson, 176 AD3d 1312, 1314 [2019] [citations omitted]; see People v Patterson, 34 NY3d 1112, 1113 [2019]).
Prospective juror No. 211 answered Supreme Court's questions to the panel by indicating that he could base his decision on the evidence he sees and hears in the case and that there was nothing he knew about the case that would prevent him from serving as a fair juror. Subsequently, during defense counsel's voir dire of the prospective jurors, counsel asked, "Does anyone here think that because we're sitting here today, before trial, something must have happened?" In response, one prospective juror answered that she "th[ought] that an accusation has happened, so whether or not something actually occurred is to be determined." Next, prospective juror No. 211 answered, "I find that likely that something happened, but I don't think that something must have happened that evening." Defense counsel then asked the panel whether "anyone else agree[d] with [juror No. 211]" and three additional prospective jurors indicated that an accusation was made or happened but that they could not yet determine if something had happened.
Thereafter, defense counsel lodged a challenge for cause to prospective juror No. 211 on the ground that he "had already formed an opinion about the case" based upon his response that it was "likely something [had] happened." Supreme Court denied that challenge. Viewing prospective juror No. 211's response in light of both defense counsel's ambiguous question as to whether the panel believed that "something" must have happened and the responses of the other prospective jurors who indicated that they believed simply that an accusation was made (see People v Warrington, 28 NY3d 1116, 1120 [2016]), the court properly concluded that the context and meaning of prospective juror No. 211's answer was, at best, unclear (see People v Parker, 278 AD2d 4, 5 [2000], lv denied 96 NY2d 737 [2001]). Prospective juror No. 211's answer did not "raise a serious doubt" as to his inability to be impartial, or indicate that he had already formed an opinion as to whether the victim had been assaulted on the evening in question, so as to trigger a duty upon the court to conduct a follow-up inquiry (People v Jackson, 176 AD3d at 1314). This conclusion is buttressed by the fact that prospective juror No. 211 affirmatively stated, as part of the same answer, that he did not "think that something must have happened that evening." As a result, the court was under no obligation to conduct a follow-up inquiry with prospective juror No. 211 (see People v Patterson, 173 AD3d 1737, 1739 [2019], affd 34 NY3d 1112 [2019]; compare People v Jackson, 176 AD3d at 1314). Furthermore, as prospective juror No. 211 had — prior to the challenged response — unequivocally expressed that, despite any preexisting biases, he could decide the case impartially and based on the evidence, Supreme Court did not abuse its discretion in denying defense counsel's challenge for cause (see People v Bostic, 174 AD3d 1135, 1136 [2019], lv denied 34 NY3d 1015 [2019]).
The sentence is not harsh or excessive. Supreme Court considered defendant's lack of prior criminal history and more than 50 letters attesting to his character. However, the court indicated that defendant's testimony explaining the encounter as consensual was incredible and could not be reconciled with the physical evidence of trauma. Defendant abused his power as the commissioner of a government agency to arrange a sexual encounter with a young subordinate that was nonconsensual and, according to the evidence at trial and the victim's statement at sentencing, caused her long-lasting trauma. Under the circumstances, we cannot say that an aggregate prison term of five years with 10 years of postrelease supervision was excessive.[FN1]
Garry, P.J., Clark, Aarons and Colangelo, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: Although defendant contends that running the sentences for the two counts consecutively was not warranted here, he concedes that it is legally permissible (People v Soto, 155 AD3d 1066, 1068 [2017] [as the victim detailed both oral sexual conduct and vaginal sexual conduct, "the[se] were separate and distinct acts, notwithstanding that they occurred in the course of a continuous incident"], lv denied 30 NY3d 1120 [2018]). We decline to disturb the consecutive nature of the prison terms.