People v Rosa (2022 NY Slip Op 03939)

People v Rosa

2022 NY Slip Op 03939

Decided on June 16, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:June 16, 2022

111190
[*1]The People of the State of New York, Respondent,
v
Derrick Rosa, Appellant.

Calendar Date:April 28, 2022

Before:Egan Jr., J.P., Clark, Reynolds Fitzgerald, Fisher and McShan, JJ.

Richard L. Herzfeld, New York City, for appellant.
P. David Soares, District Attorney, Albany (Vincent Stark of counsel), for respondent.

McShan, J.
Appeal from a judgment of the County Court of Albany County (Carter, J.), rendered February 8, 2019, upon a verdict convicting defendant of the crimes of criminal sexual act in the first degree, criminal sexual act in the second degree, rape in the first degree (two counts), rape in the second degree, rape in the third degree and endangering the welfare of a child (two counts).
In March 2018, defendant was charged by indictment with criminal sexual act in the first degree, criminal sexual act in the second degree, rape in the first degree (two counts), rape in the second degree, rape in the third degree and endangering the welfare of a child (two counts). The charges stemmed from allegations that defendant subjected the victim to various sexual acts beginning in October 2014, when she was 14 years old, with the last incident occurring in August 2017. Following a jury trial, defendant was convicted as charged. He was sentenced, as a second felony offender, to consecutive prison terms of 25 years followed by 25 years of postrelease supervision upon the convictions of criminal sexual act in the first degree (count 1) and rape in the first degree (count 3) and to equal or lesser concurrent terms on all remaining convictions with the exception of the two convictions of endangering the welfare of a child, for which he received time served. Defendant appeals.
County Court did not err in declining to dismiss the indictment for duplicitousness. A count of an indictment is duplicitous if it charges more than one offense (see CPL 200.30 [1]; People v Alonzo, 16 NY3d 267, 269 [2011]). "Where a crime is completed by a discrete act, and where a count in the indictment is based on the repeated occurrence of that act over a course of time, the count includes more than a single offense and is duplicitous" (People v Black, 65 AD3d 811, 813 [2009] [citation omitted], lv denied 13 NY3d 905 [2009]; see People v Keindl, 68 NY2d 410, 417-418 [1986]; People v Holtslander, 189 AD3d 1701, 1702 [2020]). "'Even if a count facially charges one criminal act, that count is duplicitous if the evidence makes plain that multiple criminal acts occurred during the relevant time period, rendering it nearly impossible to determine the particular act upon which the jury reached its verdict'" (People v Gannon, 174 AD3d 1054, 1057 [2019] [citation omitted], lv denied 34 NY3d 980 [2019], quoting People v Dalton, 27 AD3d 779, 781 [2006], lvs denied 7 NY3d 754, 811 [2006]; see People v Madsen, 168 AD3d 1134, 1137-1138 [2019]).
Counts 1 and 2 charged criminal sexual act in the first and second degrees based, respectively, on the theories of forcible compulsion and the age of the victim. Both counts arose out of the same conduct, alleged to have been committed on an evening between October 9, 2014 and October 31, 2014. Counts 3 and 4 charged rape in the first and second degrees based, respectively, on the theories of forcible compulsion and the age of the victim, related to conduct [*2]that occurred on a particular evening between November 27, 2014 and December 25, 2014. Counts 5 and 6 charged rape in the first and third degrees based, respectively, on the theories of forcible compulsion and the age of the victim, related to conduct that occurred on August 22, 2017. Inasmuch as counts 1 through 6 each charged defendant with committing a particular offense by engaging in a single sexual act during a specified time period, they are not facially duplicitous (see People v Keindl, 68 NY2d at 417-418; People v Farbman, 231 AD2d 588, 589 [1996], lv denied 89 NY2d 863 [1996]; see also People v Bennett, 52 AD3d 1185, 1186 [2008], lv denied 11 NY3d 734 [2008]; People v Weber, 25 AD3d 919, 922 [2006], lv denied 6 NY3d 839 [2006]). Count 7 charged endangering the welfare of a child related to certain conduct toward the victim, and count 8 charged endangering the welfare of a child related to certain conduct toward the victim's relative. "The general rule that a count is duplicitous if it charges more than one crime 'does not apply to continuing crimes, such as . . . endangering the welfare of a child'" (People v Hughes, 114 AD3d 1021, 1024 [2014], lv denied 23 NY3d 1038 [2014], quoting People v Dalton, 27 AD3d at 781; see People v Keindl, 68 NY2d at 421-422; People v Errington, 121 AD3d 1553, 1554 [2014], lv denied 25 NY3d 1163 [2015]).
Nor did the victim's trial testimony render any of the counts duplicitous. At trial, the victim testified as to three distinct incidents of sexual abuse perpetrated upon her by defendant. She testified to an incident that occurred between October 9, 2014 and Halloween of that same year (October 31, 2014) in which defendant forced her, for the first time, to perform oral sex on him. This specific criminal act corresponded with counts 1 and 2 of the indictment. The victim also provided detailed testimony concerning the first time that defendant forced her to have sexual intercourse. She specified that the incident occurred "around Christmas time" in 2014, recalling that "[t]he Christmas tree was lit up" and presents were still under it. Defendant's wife testified that the Christmas tree was always put up "around Thanksgiving," meaning that the intercourse occurred between November 27, 2014 and December 25, 2014.[FN1] This criminal act corresponded with counts 3 and 4. The victim finally described the rape that occurred on August 22, 2017 at the hands of defendant, which she reported to police the following day and thereafter resulted in defendant's arrest. This criminal act corresponded with counts 5 and 6.
Contrary to defendant's contention, the indictment was not rendered duplicitous by virtue of the victim's statement that he engaged in sexual intercourse with her "every day" following the first rape. Such testimony related to the charge of endangering the welfare of a child contained in count 7, which was based upon defendant's conduct toward the victim between December 26, 2014 (the day after [*3]the time period encompassing the first rape) through August 21, 2017 (the day before the last rape). Indeed, this was the only count of the indictment charging criminal conduct toward the victim during this time period. During summation, the People specifically tied counts 1 through 6 to the three distinct incidents of sexual abuse testified to by the victim, and further articulated to the jury that the count of endangering the welfare of a child pertaining to the victim covered "the sexual assaults that occurred after the first time [defendant] raped [the victim] and before the last time he raped her" (see People v Gannon, 174 AD3d at 1057). County Court likewise linked the instance of oral sexual conduct and the two acts of vaginal intercourse to the different counts of the indictment when instructing the jury (see People v Sinha, 84 AD3d 35, 45 [2011], affd 19 NY3d 932 [2012]; compare People v Madsen, 168 AD3d at 1138-1139; People v Black, 65 AD3d at 814). As the victim's testimony neither called upon defendant to answer for more than one offense per count nor made it impossible to determine the particular sexual acts as to which the jury reached a unanimous verdict, the indictment was not duplicitous (see People v Gannon, 174 AD3d at 1057; People v Weber, 25 AD3d at 922).
Defendant also argues that County Court erred in denying his challenges for cause to two prospective jurors. Either party may challenge a prospective juror for cause where the juror "has a state of mind that is likely to preclude him [or her] from rendering an impartial verdict based upon the evidence adduced at the trial" (CPL 270.20 [1] [b]). "If a prospective juror makes statements that raise a serious doubt regarding his or her ability to be impartial, the trial court should conduct a follow-up inquiry regarding the preexisting opinion and must excuse the juror unless he or she states unequivocally on the record that he or she can be fair and impartial" (People v Rios, 192 AD3d 1336, 1337 [2021] [internal quotation marks and citations omitted]; see People v Patterson, 34 NY3d 1112, 1113 [2019]; People v Warrington, 28 NY3d 1116, 1119-1120 [2016]).
During voir dire, defense counsel asked prospective juror No. 295, "[D]o you think that just because [defendant] is sitting here with me that something must have happened that's bad?" This prospective juror answered, "Generally, yes, something has occurred to put him in this situation. Whether or not he is actually guilty of it, that's what we're here to determine." When asked to elaborate on her answer, prospective juror No. 295 responded, "[Defendant] was accused of something. You just don't bring people in without provocation and something occurred, and we're here to determine whether . . . he's part of it or not." Defense counsel subsequently lodged a challenge for cause to prospective juror No. 295 on the basis that the juror's statement that "something has occurred to put [defendant] in this situation" was indicative [*4]of bias. Finding that the question posed by defense counsel was "confusing" and that there was an obvious basis for defendant to be in court divorced from his innocence or guilt, County Court denied the motion. Evaluating prospective juror No. 295's response in light of both defense counsel's ambiguous question as to whether "something must have happened that's bad" and the responses of this and other prospective jurors that they simply believed that an accusation was made and that their role as a juror would be to determine whether defendant was in fact guilty of the crimes (see People v Dirschberger, 185 AD3d 1224, 1226-1227 [2020], lv denied 36 NY3d 1056 [2021]; see generally People v Warrington, 28 NY3d at 1120), we conclude that prospective juror No. 295's statement did not raise a serious doubt as to her ability to be impartial or indicate that she had already formed an opinion as to defendant's guilt or innocence (see People v Dirschberger, 185 AD3d at 1227; People v Rivera, 70 AD3d 1177, 1179 [2010], lvs denied 14 NY3d 891, 15 NY3d 855 [2010]; compare People v Jackson, 176 AD3d 1312, 1314-1315 [2019]). Consequently, County Court was under no obligation to conduct a follow-up inquiry with prospective juror No. 295 and its refusal to strike this juror for cause was not in error (see People v Dirschberger, 185 AD3d at 1227; People v Patterson, 173 AD3d 1737, 1739 [2019], affd 34 NY3d 1112 [2019]).
During voir dire by the People, prospective juror No. 288 was asked whether she believed that "the relationship between the victim of the crime and the perpetrator could affect how and when" a victim discloses the abuse. This prospective juror responded in the affirmative, explaining that, during the course of her work as a lobbyist, she had learned that victims sometimes delay in reporting for many reasons, including that they are scared or blame themselves. When later asked by defense counsel whether she had experiences with individuals who may have delayed reporting a crime, she answered, "not directly," and reiterated that she was aware of these issues from the news and her time spent hearing different interest groups. As to the impact that her exposure to these issues would have in serving as a juror in this case, prospective juror No. 288 stated, "I can understand why someone might take some time to come forward, and I wouldn't say, oh, they must be lying or it might not have happened." The juror then added that she "may be a little more sympathetic to it because [she's] a little more aware of it." She also agreed that it was "possible" that she could hear something in this case that would trigger a job-related memory, but twice declared that she would "try [her] very best to be fair and impartial."
Taken as a whole, we do not find that prospective juror No. 288's statements raise "serious doubt" regarding her ability to render an impartial verdict (People v Wright, 30 NY3d 933, 934 [2017]; see People v Chambers, 97 NY2d 417, 419 [[*5]2002]). The juror's comment that that she would be "sympathetic" to the fact that a victim of abuse could "take some time to come forward" does not, to our reading, indicate a bias against defendant or an inclination toward the victim. Rather, when read "in totality and in context" (People v Patterson, 34 NY3d at 1113 [internal quotation marks and citation omitted]; see People v Johnson, 94 NY2d 600, 616 [2000]), this statement simply reflected prospective juror No. 288's willingness to understand and accept the idea that a victim might delay in disclosing his or her abuse. Although this juror had some awareness of the issue of delayed reporting as a result of her employment, there is nothing to suggest that she was an advocate or lobbyist for an interest group working on these issues or that she had any direct interaction with victims of sexual abuse through her employment (compare People v Jackson, 176 AD3d at 1314; People v Clark, 171 AD3d 1530, 1531 [2019]). Instead, prospective juror No. 288 had essentially the same awareness that a well-informed citizen who follows the news might possess. It is settled that prospective jurors "need not 'be totally ignorant of the facts and issues involved'" (People v Cahill, 2 NY3d 14, 38 [2003], quoting Irvin v Dowd, 366 US 717, 722 [1961]; accord People v Maffei, 35 NY3d 264, 270-271 [2020]; see People v Knight, 280 AD2d 937, 940 [2001], lv denied 96 NY2d 864 [2001]; People v Butts, 140 AD2d 739, 740 [1988]), and prospective juror No. 288 twice assured that she would "try [her] very best to be fair and impartial." Although defendant seizes upon the victim's use of the word "try," terms such as "'think' or 'try' are 'not . . . talismanic words that automatically make a statement equivocal'" (People v Shulman, 6 NY3d 1, 28 [2005] [brackets omitted], cert denied 547 US 1043 [2006], quoting People v Chambers, 97 NY2d 417, 419 [2002]; accord People v Wilkinson, 166 AD3d 1396, 1398 [2018], lv denied 32 NY3d 1179 [2019]) and County Court, evaluating "'the whole examination of the juror, including h[er] appearance and demeanor,' determined that [s]he . . . gave an unequivocal assurance of impartiality" (People v Rivera, 33 AD3d 303, 305 [2006], affd 9 NY3d 904 [2007], quoting People v Shulman, 6 NY3d at 27; see People v Vargas, 155 AD3d 1530, 1531 [2017], lv denied 30 NY3d 1121 [2018]; People v Young, 298 AD2d 258, 258-259 [2002], lv denied 99 NY2d 566 [2002]; see generally People v Harris, 26 NY3d 321, 325 [2015] [explaining that the determination of whether a prospective juror is able to perform fairly and impartially is "committed largely to (the) judgment of the (t)rial (j)udge with his (or her) peculiar opportunities to make a fair evaluation" (id., quoting People v Williams, 63 NY2d 882, 885 [1984])]; People v Johnson, 94 NY2d at 613 [same]). Under the facts and circumstances presented here, we cannot conclude that County Court abused its discretion in denying the request to dismiss prospective juror [*6]No. 288 for cause (see People v Patterson, 34 NY3d at 1113; People v Rivera, 70 AD3d at 1179; People v Wilson, 52 AD3d 941, 942 [2008], lv denied 11 NY3d 743 [2008]; People v Rivera, 33 AD3d at 305-306).
Defendant's contention that County Court committed reversible error when it permitted the People to introduce evidence of certain prior bad acts during their case-in-chief is unpreserved for our review, as he failed to object upon the admission of such testimony at trial (see People v Flower, 173 AD3d 1449, 1455 [2019], lv denied 34 NY3d 931 [2019]; People v Mercado, 113 AD3d 930, 933 [2014], lv denied 23 NY3d 1040 [2014]). Were we to consider this issue, we would find it to be without merit (see People v Knox, 167 AD3d 1324, 1326 [2018], lv denied 33 NY3d 950 [2019]; compare People v Leonard, 29 NY3d 1, 7-8 [2017]).
Finally, we find no merit to defendant's challenges to the sentence imposed. To the extent that defendant asserts that the sentence constituted a penalty for exercising his right to a jury trial, this argument is unpreserved (see People v Kabia, 197 AD3d 788, 792 [2021], lv denied 37 NY3d 1162 [2022]; People v Santana, 179 AD3d 1299, 1303 [2020], lv denied 35 NY3d 973 [2020]). "In any event, the fact that a sentence imposed after trial is longer than one offered in plea negotiations does not establish vindictiveness where, as here, nothing else in the record supports defendant's claim" (People v Williams, 163 AD3d 1160, 1165 [2018] [citation omitted], lvs denied 32 NY3d 1170, 1179 [2019]; accord People v Delbrey, 179 AD3d 1292, 1299 [2020], lv denied 35 NY3d 969 [2020]). Indeed, quite to the contrary, the record before us reveals that the sentence was based upon legitimate sentencing considerations. Defendant's abuse of the victim spanned a number of years and, despite the overwhelming evidence of his guilt, defendant continued to assert at sentencing that both the victim and his own wife had "blatantly lie[d]" during their trial testimony. Given the protracted and deplorable nature of defendant's crimes, his exploitation of the position of trust that he held over this young child and his failure to accept responsibility or express remorse for his actions, we do not find defendant's sentence to be harsh or excessive (see People v Hartle, 159 AD3d 1149, 1155 [2018], lv denied 31 NY3d 1082 [2018]; People v St. Ives, 145 AD3d 1185, 1188 [2016], lv denied 29 NY3d 1036 [2017]; People v Adams, 135 AD3d 1154, 1158 [2016], lv denied 27 NY3d 990 [2016]).
Egan Jr., J.P., Clark, Reynolds Fitzgerald and Fisher, JJ., concur.
ORDERED that the judgment is affirmed.

Footnotes

Footnote 1: We take judicial notice of the fact that, in 2014, Thanksgiving fell on November 27 (see generally Hamilton v Miller, 23 NY3d 592, 603 [2014]).