People v Everett (2024 NY Slip Op 05157)

People v Everett

2024 NY Slip Op 05157

Decided on October 17, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:October 17, 2024

112831
[*1]The People of the State of New York, Respondent,
v
Keyone Everett, Also Known as Banga, Appellant.

Calendar Date:September 12, 2024

Before:Egan Jr., J.P., Clark, Aarons, Reynolds Fitzgerald and Fisher, JJ.

Paul Skip Laisure, Garden City, for appellant.
Robert M. Carney, District Attorney, Schenectady (Peter H. Willis of counsel), for respondent.

Fisher, J.
Appeal from a judgment of the County Court of Schenectady County (Mark J. Caruso, J.), rendered July 16, 2020, upon a verdict convicting defendant of the crimes of criminal possession of a weapon in the second degree (two counts), criminal possession of a weapon in the third degree and attempted bribing a witness.
In April 2019, in a joint indictment with Brendan Mitchell, defendant was charged with two counts of criminal possession of a weapon in the second degree (counts 1 and 2), criminal possession of a weapon in the third degree (count 3), reckless endangerment in the first degree (count 6), tampering with physical evidence (count 7) and attempted bribing a witness (count 8). The charges were in connection with an incident that occurred at a nightclub located in the City of Schenectady during the early morning hours of March 9, 2019, where the indictment alleges that "defendant possessed a loaded firearm" in a public place with the intent to use that firearm unlawfully and thereafter attempted to bribe a witness to abstain from testifying. Following a jury trial,[FN1] defendant was acquitted of reckless endangerment (count 6) and tampering with evidence (count 7), but convicted of the remaining charges. Defendant was then sentenced, as a second felony offender, to concurrent prison terms of 10 years, to be followed by five years of postrelease supervision, on counts 1 and 2, and to lesser concurrent prison terms on counts 3 and 8. Defendant appeals.
Defendant contends that his criminal possession of a weapon convictions (counts 1, 2 and 3) are not supported by legally sufficient evidence.[FN2] As charged in counts 1 and 2 of the indictment, a person is guilty of criminal possession of a weapon in the second degree when such person knowingly possesses a loaded and operable firearm "with intent to use the same unlawfully against another" (Penal Law § 265.03 [1] [b]), or when such possession takes place outside of such person's home or place of business (see Penal Law § 265.03 [3]; People v Taylor, 207 AD3d 806, 808 [3d Dept 2022], lv denied 39 NY3d 942 [2022]). Pertinent here, "[a] 'loaded firearm' is defined as 'any firearm loaded with ammunition or any firearm which is possessed by one who, at the same time, possesses a quantity of ammunition which may be used to discharge such firearm' " (People v Watts, 215 AD3d 1170, 1171 [3d Dept 2023] [internal brackets omitted], quoting Penal Law § 265.00 [15]). With respect to count 3, a person is guilty of criminal possession of a weapon in the third degree when such person has been previously convicted of any crime and commits one of the enumerated subsections of an offense of criminal possession of a weapon in the fourth degree (see Penal Law § 265.02 [1]), which includes when a person "possesses any firearm" (Penal Law § 265.01 [1]). Relating to each of these counts, "[a] defendant may be found to possess a firearm through actual, physical possession or through constructive possession — the latter of which [*2]requires proof that the defendant exercised dominion or control over the property by a sufficient level of control over the area in which the weapon is found" (People v Bryant, 200 AD3d 1483, 1486 [3d Dept 2021] [internal quotation marks, brackets and citations omitted], appeal dismissed 38 NY3d 1158 [2022]). "Constructive possession may be established through circumstantial evidence, and does not require proof that a defendant has exclusive access to the area where a weapon is found" (People v Watts, 215 AD3d at 1172 [internal quotation marks, brackets and citations omitted]).
At trial, two police officers with the Schenectady Police Department testified that they responded to a call for an ongoing fight between two groups of people in a nightclub at approximately 3:00 a.m. on March 9, 2019. When the officers arrived at the scene, the fight had concluded and a bouncer was pointing to a Chevy Malibu sedan that was driving away and occupied by defendant, Mitchell and Richard Collier. Although the police initially lost track of the vehicle, they soon found it parked on the side of the road in a residential area with several individuals standing around it, who ran away when the police arrived. Following an unsuccessful chase through the street and several properties, one of the police officers testified that he disengaged from the chase and returned to the parked vehicle when the individual he had just chased — who was later identified as defendant — reappeared near the Chevy with snow all over his clothing. Defendant was ultimately detained and returned to the nightclub for a showup, where the security manager identified defendant as the individual who had been involved in the fight, attempted to reenter, and then flashed a silver revolver tucked into the waistband of his pants when he was denied reentry and the police started to arrive. A bouncer testified that, when defendant was initially escorted out after the fight, defendant was angry and had made comments implying that he was going to return. Video footage from the nightclub surveillance cameras depicted the fight inside the club and, from a camera looking out the front door and into the parking lot, another recording showed the Chevy pull up near the entrance, defendant exit and approach the bouncers while saying something, and then defendant lift up his shirt causing the bouncers to react by stepping back, before defendant runs back to the Chevy.
Pursuant to a plea agreement, Mitchell testified that the Chevy was rented by his girlfriend and that he had been driving it around the area with several acquittances looking for a certain individual that they had an ongoing dispute with on the evening of March 8, 2019. While going from place to place, at some point he picked up defendant, who told others in the car that he had a gun for his "protection" in case they found the individual they were looking for that evening, and that "if anything should happen, it belongs to me." Although Mitchell [*3]did not initially see the gun, he later saw defendant exit the vehicle and come back into it with a silver revolver that had black tape wrapped around the handle. Mitchell further testified that he later drove defendant and Collier to the nightclub, and that he was involved in a fight that caused him to suffer injuries to his face and mouth that resulted in significant bleeding. According to Mitchell, after the bouncers escorted them out, defendant was angry and saying "I got something for that," in reference to the fight. They each returned to the Chevy and got in the vehicle, now with Collier driving, defendant in the front passenger seat and Mitchell lying down in the back seat due to his injuries. At this point, defendant asked for his gun and Mitchell, with bloody hands, reached under the seat where defendant had placed it and handed the gun to defendant, and lost consciousness before waking up to car doors slamming. He testified that he saw Collier and defendant exit the car and confront the bouncers at the nightclub door, and, once the police arrived, they retreated back to the car and drove away. Mitchell then testified he was going in and out of consciousness again as Collier was driving, but that he heard a gunshot, smelled gun discharge and observed that the passenger side window where defendant was sitting had been lowered all the way down.
The People also presented the testimony of several members of law enforcement involved in the investigation. A detective with the Schenectady Police Department testified that the Chevy was discovered with what appeared to be blood on the outside of it, a silver revolver under the front passenger side seat with blood on it, documents with Mitchell's and Collier's names on them, and a cell phone, among other items in the trunk. He also testified that the police confirmed the vehicle had been rented to Mitchell's girlfriend, and that defendant did not have a pistol permit. A forensic investigator with the State Police testified that he examined defendant's cell phone, confirming that it was his device because the phone's Apple ID was defendant's full name and the social media handles were defendant's known street name. On this cell phone, the forensic investigator further testified he discovered a video of defendant pointing a loaded silver revolver into a camera less than a week before the incident,[FN3] and a photograph of defendant wearing clothing late in the evening of March 8, 2019 that matches what he was seen wearing at the nightclub a few hours later around 3:00 a.m. on March 9, 2019 — both of which were shown to the jury. Two evidence technicians with the Schenectady Police Department also testified at the trial, one stating that the gun was recovered with five live rounds and one expended round that was in the cylinder of the revolver. The other technician testified that he performed a test fire of the gun with the ammunition recovered from it and confirmed that the gun was operable. However, he [*4]was unable to extract any fingerprints from the gun. Similarly, a forensic scientist with the State Police testified that defendant's DNA was not on any part of the gun.
When viewing the facts in the light most favorable to the People, as we are required to do, we conclude that there is legally sufficient evidence to support the convictions of criminal possession of a weapon in the second and third degrees (see Penal Law §§ 265.02 [1]; 265.03 [1] [b]; [3]).[FN4] The People presented evidence that defendant had actual possession and constructive possession of the gun at multiple times throughout the night of the incident, which spanned from March 8 to March 9, 2019. Multiple witnesses testified that defendant was seen with a silver revolver that had a black-taped handle on the night of the incident, including Mitchell who handed defendant the revolver in the car and the security manager who saw the gun tucked into defendant's waistband when he lifted up his shirt and told staff at the door, "[y]ou see what I got here, right." This exchange is corroborated by the video footage from the nightclub, in which — although the gun is not visible — defendant can be seen lifting up his shirt and the staff at the entrance immediately reacting to it. Photographs taken by police further corroborate Mitchell's statements, as blood was observed in the back seat of the Chevy and on the gun that he handed to defendant after suffering injuries from the fight. Although defendant contends that the gun was not his, which is contrary to what he told occupants of the Chevy when he got into the vehicle with the gun, defendant is also seen holding a strikingly similar loaded silver revolver with a black handle in a cell phone video recovered from his device which had been recorded only days before the incident. Additional testimony from Mitchell demonstrated that the gun recovered from the front passenger seat of the Chevy where defendant was seated had been operable, as he heard a gunshot and smelled the gun discharge, and the police ultimately found an expended round in the cylinder of the revolver; a subsequent test fire further confirmed operability. Moreover, considering Mitchell's testimony that defendant carried the gun when they were looking for a certain individual that they had a dispute with, coupled with the testimony from the bouncer and the security manager that defendant implied he would be returning after the fight in which his friend was injured by the other group, the People presented legally sufficient evidence that also demonstrated that defendant intended to use the gun unlawfully against another individual and that he was not in his home or place of business. Based on the forgoing, as there is a valid line of reasoning and permissible inferences through which a rational jury could have found that the elements for each weapon offense was proven beyond a reasonable doubt, we find that there is legally sufficient evidence to support defendant's convictions [*5](see People v Moore, 223 AD3d 1085, 1093 [3d Dept 2024], lv denied 41 NY3d 1003 [2024]; People v Watts, 215 AD3d at 1173; People v Jenkins, 215 AD3d 1118, 1121-1122 [3d Dept 2023], lv denied 40 NY3d 997 [2023]; see also People v Stines, 212 AD3d 883, 887 [3d Dept 2023], lv denied 39 NY3d 1113 [2023]).
To the extent that defendant further challenges his conviction of criminal possession of a weapon in the second degree as unconstitutional in light of the decision of the Supreme Court of the United States in New York State Rifle & Pistol Assn., Inc. v Bruen (597 US 1 [2022]), such issue is unpreserved for our review (see People v David, 41 NY3d 90, 95-96 [2023]; People v Caberea, 41 NY3d 35, 45 [2023]). Similarly, as it relates to defendant's conviction for attempted bribing of a witness, although defendant objected to the jail call recordings being admitted into evidence, he did not do so on the ground that the People failed to lay a proper foundation for admission and, therefore, this issue is also unpreserved (see People v Holley, 188 AD3d 1644, 1646 [4th Dept 2020], lv denied 37 NY3d 965 [2021]; People v Heard, 92 AD3d 1142, 1144-1145 [3d Dept 2012], lv denied 18 NY3d 994 [2012]).
Lastly, defendant contends that County Court erred in denying his challenge for cause to prospective juror No. 160 based on his favorable bias toward law enforcement. We disagree. Pursuant to CPL 270.20 (1) (b), a prospective juror is disqualified when he or she "evinces a state of mind that is likely to preclude him [or her] from rendering an impartial verdict based upon the evidence adduced at the trial" (accord People v Nicholas, 98 NY2d 749, 751-752 [2002]). "If a prospective juror makes statements that raise a serious doubt regarding his or her ability to be impartial, the trial court should conduct a follow-up inquiry regarding the preexisting opinion and must excuse the juror unless he or she states unequivocally on the record that he or she can be fair and impartial" (People v Dirschberger, 185 AD3d 1224, 1226 [3d Dept 2020] [internal quotation marks and citations omitted], lv denied 36 NY3d 1056 [2021]). Accordingly, "[a] statement by a potential juror suggesting a possible bias can be cured, and the juror not excused, if the juror provides unequivocal assurance that he or she can set aside any bias and render an impartial verdict based on the evidence" (People v Bedard, 132 AD3d 1070, 1070 [3d Dept 2015] [internal quotation marks, brackets and citations omitted]).
Here, prospective juror No. 160 indicated that he had several family members who were police officers and stated that he would "guess" he trusts members of law enforcement more than other individuals, but confirmed that he did not know any of the members of law enforcement on the witness list. County Court then immediately inquired whether he could assure the parties and the court that he would "be fair and impartial to both sides, despite the fact that [he has] relatives that are in law enforcement[*6]," to which prospective juror No. 160 confirmed that he could. Although he later admitted to defense counsel during voir dire that he would tend to automatically side with law enforcement, during follow-up he confirmed that he would "not let [his] preconceived notions get in there at all, just listen to the facts." Despite further giving defense counsel conflicting answers to a hypothetical situation whether he would give the same weight to the testimony of a police officer and a nonpolice officer, County Court again inquired whether he could follow the law and evaluate the credibility of a police officer in the same manner that he would evaluate the testimony of a nonpolice officer witness, to which the juror affirmatively answered that he would. When viewing prospective juror No. 160's responses in light of the limited voir dire by defense counsel and the immediate inquiries made by County Court that solicited unequivocal assurances to remain fair and impartial, we find that any doubt raised by prospective juror No. 160's initial responses were rehabilitated by County Court and did not require disqualification for cause (see People v Ellis, 34 NY3d 1092, 1093 [2019]; People v Dirschberger, 185 AD3d at 1227; compare People v Jones, 45 AD3d 1178, 1179 [3d Dept 2007]; People v Young, 119 AD3d 970, 971-972 [3d Dept 2014]). We have examined defendant's remaining contentions and have found them to be without merit or rendered academic.
Egan Jr., J.P., Clark, Aarons and Reynolds Fitzgerald, JJ., concur.
ORDERED that the judgment is affirmed.

Footnotes

Footnote 1: Prior to trial, Mitchell accepted a plea agreement that required him, among other things, to plead guilty to attempted criminal possession of a weapon and to truthfully provide testimony at defendant's trial, in return for a reduced sentence.

Footnote 2: Defendant did not challenge the weight of the evidence in his initial brief, and as the first time he did raise such contention was in his reply brief, it is not properly before us (see People v Ackerman, 173 AD3d 1346, 1348-1349 [3d Dept 2019], lv denied 34 NY3d 949 [2019]).

Footnote 3: Defendant contends that County Court erred in admitting the cell phone video because it was Molineux evidence. However, as the People contended that the gun seen in such video was the same gun seen by Mitchell and the security manager, and which was ultimately recovered from the Chevy, the video was not being introduced as evidence of a prior uncharged crime or bad act, and therefore was not subject to Molineux analysis (see People v Chappell, 198 AD3d 1018, 1019-1020 [3d Dept 2021], lv denied 37 NY3d 1160 [2022]). In making such proper determination, County Court then correctly weighed the probative value of this evidence against any prejudice to defendant, considering the People's contentions that such video also demonstrated defendant's familiarity with and access to weapons; we discern no error in its admission (see People v Wells, 141 AD3d 1013, 1020 [3d Dept 2016], lv denied 28 NY3d 1189 [2017]; People v Burnell, 89 AD3d 1118, 1121 [3d Dept 2011], lv denied 18 NY3d 922 [2012]).

Footnote 4: Relevant to count 3, defendant admitted to a prior conviction of attempted robbery in the second degree, therefore the People were not required to prove defendant's prior conviction as required by Penal Law § 265.02 (1).